[No. B236792. Second Dist., Div. Five. Jan. 6, 2012.]

In re TERRANCE RENE DAVID on Habeas Corpus.

**COUNSEL**

Richard Pfeiffer, under appointment by the Court of Appeal, for Petitioner Terrance Rene David.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, and Maria G. Chan, Deputy Attorney General, for Respondent The People.

OPINION

MOSK, J.—

## INTRODUCTION

Petitioner Terrance Rene David, convicted in 1989 of second degree murder for killing two people while driving under the influence of a drug, was paroled in 2010. Respondent, California's Department of Corrections and Rehabilitation, Division of Adult Parole Operations,[1] oversees petitioner on parole. At the request of Elizabeth Coral, the sister of one of the victims, the Department imposed a condition restricting petitioner from living within 35 miles of Ms. Coral, pursuant to Penal Code section 3003, subdivision (f).[2] Petitioner desired to live with and take care of his mother, who resides in Burbank, California, which residence was within 35 miles of the residence of Ms. Coral. We hold that the request of the next of kin does not satisfy the requirements of section 3003, subdivision (f). Contrary to the Department's assertion, the definition of "victim" in article I, section 28, subdivision (e) of the California Constitution is not applicable to Penal Code section 3003, subdivision (f). Moreover, in this matter, the restriction should not have been applied as a condition of parole, either under section 3003, subdivision (f) or otherwise because the restriction has no relationship to the crime for which petitioner was convicted, is not related to the deterrence of future criminality, and is not reasonably related to the life, safety, or well-being of anyone entitled to the application of such a restriction.

## BACKGROUND

In 1989, petitioner was convicted of second degree murder based on implied malice, for causing two fatalities while driving under the influence of the drug phencyclidine (PCP). (*People v. David* (1991) 230 Cal.App.3d 1109 [281 Cal.Rptr. 656].) After having been denied parole by the Board of Parole Hearings (Board), petitioner filed a petition for a writ of habeas corpus in the Los Angeles Superior Court. That court granted the petition and required the Board to hold a new hearing. After a new hearing, the Board found petitioner suitable for parole. Petitioner had expressed remorse and apologized to the families of the victims. Ms. Coral expressed that she and the family had forgiven petitioner. The Board invoked the special conditions of parole, but

---

[1] California's Department of Corrections and Rehabilitation is sometimes referred to as CDCR and its Division of Adult Parole Operations as DAPO. (*In re E.J.* (2010) 47 Cal.4th 1258, 1263, 1266 [104 Cal.Rptr.3d 165, 223 P.3d 31].) We refer to them collectively as Department.

[2] All further statutory references are to the Penal Code, unless otherwise indicated.

did not impose a restriction on where petitioner could reside based on the residence of any other person. Petitioner was to be on parole for the rest of his life.

At the hearing, Ms. Coral expressed a desire that petitioner not be paroled within 35 miles of her family residence, and she indicated she would communicate that desire to the Department's Office of Victim and Survivor Rights and Services. The Board stated, "In its decision, the hearing panel read all of [petitioner's] residence plans into the record because they hoped 'that at least one of them will be adequate, if the victim's families do decide to write the letter and we have to curtail where you go. . . .' [¶] Upon review [the Department's] Office of Victim and Survivor's Services has no record of the victim's next of kin requesting that [petitioner] not be allowed to live within 35 miles of their residence."

The Governor declined to review the Board's decision to parole petitioner. Petitioner had a release date in 2010 and was paroled in July of that year. His parole agent reported that petitioner had no parole violations. Petitioner successfully completed his residential recovery program.

The Board did not object to petitioner's parole plan to live with his brother or mother in Burbank, California—they live next door to each other—after completion of his residential recovery program. Petitioner said he intended to live with his ailing mother and to help take care of her. One of the conditions of petitioner's parole was, "You shall not contact or attempt to contact your crime victim(s): LAVELL HUNTER, GLADYS CORAL or their immediate families. 'No contact' means no contact in any form, whether direct or indirect, personally, by telephone, by writing, electronic media, computer, or through another person, etc."

Before his release date, petitioner's prison counselor presented petitioner with another notice and conditions of parole, which provided, "You are subject to the following special conditions: You will not reside within 35 miles of the residence of the next of kin in Lynwood, Ca[lifornia]. Report to Parole Outpatient clinic for evaluation. You will not possess or consume alcoholic beverages. Submit to alcohol, THC and anti-narcotic testing. Participate in a substance abuse relapse prevention program. You will have no contact or communication with the families of the victims Lavell Hunter and Gladys Coral."

Petitioner was released from prison custody and filed a habeas corpus petition in the Los Angeles Superior Court challenging the 35-mile residence restriction. The Board later rescinded the 35-mile restriction, but noted, "If a written request to impose the residency restriction is submitted by the

victim's next of kin, the special condition may be imposed if it meets the criteria in Penal Code section 3003(f)."

Petitioner received notification from his parole agent that the Board had rescinded the 35-mile restriction of parole and that he was free to move in with his family.[3] Thereafter, petitioner received notice that the 35-mile residence restriction had been reinstated by the Department. The victim's sister, Ms. Coral, had requested in writing that petitioner not be allowed to reside within 35 miles of her residence. According to a parole agent, "The victim's next of kin's request was honored in order to protect her well-being, and to protect her from living in fear and under the stress of knowing that [petitioner] lives in her community." The parole agent said, "[the Department] has traditionally honored the 35-mile residence restriction when requested by victims of violent crimes." The parties agree that petitioner was residing within 35 miles of Ms. Coral.[4] Petitioner attached to his petition an Office of Victim and Survivor Rights and Services form, that specifies that the restriction request "applies to victims and witnesses only."

Petitioner filed a new habeas corpus petition, challenging the Board's reinstatement of the 35-mile residence restriction. The superior court ordered a stay of the residence restriction, issued an order to show cause, and reappointed counsel for petitioner. The superior court then denied habeas corpus relief, determining that the word "victim" in section 3003, subdivision (f) is defined in the California Constitution and therefore includes Ms. Coral as the next of kin of the decedent victim.

Petitioner petitioned this court for a writ of habeas corpus and for an immediate stay. This court granted the stay and issued an order to show cause why the habeas corpus writ should not be granted.

## DISCUSSION

### A. *Habeas Corpus and Burden of Proof*

This court has original jurisdiction in habeas corpus proceedings. (Cal. Const., art. VI, § 10.) A petition for a writ of habeas corpus can be used to challenge a parole restriction. (See *In re E.J., supra,* 47 Cal.4th at p. 1264.)

---

[3] Petitioner's attorney alleges that acting upon this information, petitioner moved in with his family, signed up with a local medical care facility, and undertook the care of his sick mother.

[4] The Cities of Burbank, where petitioner was supposed to live, and Lynwood, where Ms. Coral lives, are approximately 26 miles apart. (<http://www.distancebetweencities.net/lynwood_ca_and_burbank_ca> [as of Jan. 6, 2012].) The Attorney General said at oral argument that petitioner was registered at an address in Torrance, California, 12 miles from Ms. Coral.

The issuance of the order to show cause "signifies our *preliminary determination* that the petitioner has made a prima facie statement of specific facts which, if established, entitle [petitioner] to habeas corpus relief under existing law.' [Citations.] [¶] . . . [¶] . . . [I]t is the *petitioner* who bears the ultimate burden of proving the factual allegations that serve as the basis for his or her request for habeas corpus relief." (*In re Serrano* (1995) 10 Cal.4th 447, 455–456 [41 Cal.Rptr.2d 695, 895 P.2d 936].)

## B. *Statutory and Constitutional Provisions*

Section 3003, subdivision (f) is a California's residence restriction statute, which limits a parolee convicted of certain enumerated felonies from living within 35 miles of the victim or witness to the crime, if certain criteria are met. The statute provides: "Notwithstanding any other provision of law, an inmate who is released on parole shall not be returned to a location within 35 miles of the actual residence of a victim of, or a witness to, a violent felony as defined in paragraphs (1) to (7), inclusive, and paragraph (16) of subdivision (c) of Section 667.5 or a felony in which the defendant inflicts great bodily injury on any person other than an accomplice that has been charged and proved as provided for in Section 12022.53, 12022.7, or 12022.9, if the victim or witness has requested additional distance in the placement of the inmate on parole, and if the Board of Parole Hearings or the Department of Corrections and Rehabilitation finds that there is a need to protect the life, safety, or well-being of a victim or witness."

Article I, section 28, subdivision (b) of the California Constitution[5] provides certain "rights" to victims of crime, including, inter alia, the rights of privacy, notice of proceedings, and restitution. Subdivision (e) provides: "As used in this section, a 'victim' is a person who suffers direct or threatened physical, psychological, or financial harm as a result of the commission or attempted commission of a crime or delinquent act. The term 'victim' also includes the person's spouse, parents, children, siblings, or guardian, and includes a lawful representative of a crime victim who is deceased, a minor, or physically or psychologically incapacitated. The term 'victim' does not include a person in custody for an offense, the accused, or a person whom the court finds would not act in the best interests of a minor victim." Section 3053, subdivision (a) provides, "The Board of Prison Terms

[5] Article I, section 28 of the California Constitution originally was enacted by initiative in 1982 as "The Victims' Bill of Rights" (see *Brosnahan v. Brown* (1982) 32 Cal.3d 236, 239 [186 Cal.Rptr. 30, 651 P.2d 274]) and amended by initiative in 2008 as the "Victims' Bill of Rights Act of 2008: Marsy's Law" (see *Kling v. Superior Court* (2010) 50 Cal.4th 1068, 1071, 1080 [116 Cal.Rptr.3d 217, 239 P.3d 670]).

[(succeeded by Board of Parole Hearings)[6]] upon granting any parole to any prisoner may also impose on the parole any conditions that it may deem proper."

## C. *Interpretation and Application of Section 3003, Subdivision (f)*

■ " 'When construing a statute, we must "ascertain the intent of the Legislature so as to effectuate the purpose of the law." ' [Citation.] '[W]e begin with the words of a statute and given these words their ordinary meaning.' [Citation.] 'If the statutory language is clear and unambiguous, then we need go no further.' [Citation.] If, however, the language supports more than one reasonable construction, we may consider 'a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' [Citation.] Using these extrinsic aids, we 'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*People v. Sinohui* (2002) 28 Cal.4th 205, 211–212 [120 Cal.Rptr.2d 783, 47 P.3d 629].)

■ Under section 3003, subdivision (f), only the "victim" of or "witness" to a violent felony may petition for a 35-mile residential restriction. The statutory language is unambiguous in that it refers to the victim or witness and not to anyone else. "Appellate courts may not rewrite unambiguous statutes." (2A Singer & Singer, Sutherland Statutes and Statutory Construction (2007 new ed.) § 46:4, pp. 179–181 (Singer); see *People v. Bostick* (1996) 46 Cal.App.4th 287, 291 [53 Cal.Rptr.2d 760] ["It is a cardinal rule that where a statute is facially clear and unambiguous, no judicial interpretation is necessary."].) Therefore we do not rewrite the clear language of the statute to broaden the statute's application.

Because the statute is clear and unambiguous, for its interpretation we do not have to resort to any extrinsic aids. (2A Singer, *supra*, § 46:4, pp. 177–178 ["Even after reviewing the legislative history or other extrinsic aids, there is no rule of statutory construction that allows a court to declare that the legislature did not mean what the plain language of the statute expresses."]; 2B Singer (2008 new ed.) § 51:1, p. 197 ["other statutes may not be resorted to if the statute is clear and unambiguous"]; see *Poway Unified School Dist. v. Chow* (1995) 39 Cal.App.4th 1478, 1482 [46 Cal.Rptr.2d

---

[6] Section 5075, subdivision (a); see *People v. Superior Court (O'Connor)* (2011) 199 Cal.App.4th 441, 447, footnote 3 [131 Cal.Rptr.3d 770].

651].) Even if the word "victim" could be viewed as ambiguous, we do not interpret the statute to include as a victim the victim's next of kin. When the Legislature intended to give a broader meaning to the term "victim," it did so specifically. For example, section 1202.4, subdivision (k) states, "For purposes of this section, 'victim' shall include all of the following: [¶] (1) The immediate surviving family of the actual victim. [¶] (2) Any corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision, agency, or instrumentality, or any other legal or commercial entity when that entity is a direct victim of a crime. [¶] (3) Any person who has sustained economic loss as the result of a crime and who satisfies any of the following conditions: [¶] (A) At the time of the crime was the parent, grandparent, sibling, spouse, child, or grandchild of the victim . . . ."

When the Legislature intended to cover the victim's family members or others, it also did so specifically. For example, Government Code section 13951, subdivision (g), part of a crime victims compensation measure, provides, " 'Victim' means an individual who sustains injury or death as a direct result of a crime as specified in subdivision (e) of Section 13955." But then in the same statute, Government Code section 13955 specifically covers a family member, referred to as "a derivative victim." (Gov. Code, § 13955, subd. (c)(1).) Another example is section 3043.6, which provides that "[a]ny person authorized to appear at a parole hearing . . . or a prosecutor authorized to represent the views of the victim, his or her immediately family, or next of kin . . . shall have the right to speak last . . . ." (See §§ 3043.2, subd. (a)(1) ["the Board . . . shall permit the victim, his or her next of kin [or] immediate family members" to file a statement], 3043, subd. (a)(1) ["next of kin of the victim if the victim has died"].) Sections such as 3043 or 3043.6, dealing with parole hearings, do not give an expanded definition of the term "victim." Instead, they allow certain rights to next of kin, but not because they are "victims."[7]

Section 3003, subdivision (b)(1), part of the same statute that includes subdivision (f), refers to "[t]he need to protect the life or safety of a victim, the parolee, a witness, *or any other person*" (italics added), thereby explicitly distinguishing between a "victim" and "any other person." The Legislature did not include anyone but the "victim" or "witness" in subdivision (f).

---

[7] The Attorney General refers to the statements of legislators in connection with the enactment of section 3003 that the provision was to protect victims and their families and referring to a mother whose child was murdered by a neighbor. But the Supreme Court has said that "the statements of individual legislators are not generally considered in construing a statute." (*American Financial Services Assn. v. City of Oakland* (2005) 34 Cal.4th 1239, 1262, fn. 11 [23 Cal.Rptr.3d 453, 104 P.3d 813].)

■ Another statute dealing with victims' rights is section 679.01, which defines "[v]ictim" as meaning "a person against whom a crime has been committed." (§ 679.01, subd. (b).) Statutes that are in pari materia should be interpreted in the same manner. (See *People v. Honig* (1996) 48 Cal.App.4th 289, 327 [55 Cal.Rptr.2d 555].) Sections 679.01 and 3003, subdivision (f) "relate to the same person or thing, to the same class of person or things, or have the same purpose or object" (*Walker v. Superior Court* (1988) 47 Cal.3d 112, 124, fn. 4 [253 Cal.Rptr. 1, 763 P.2d 852]) and are, in effect, in pari materia.

It is true that if the victim is a murder victim, there would be no victim under section 3003, subdivision (f), and the victim's next of kin could not invoke section 3003, subdivision (f) to prevent the parolee from residing within 35 miles of him or her. If there is no such victim because of a murder and no witness, *this particular statute does not apply*. The Board, however, is authorized by section 3053, when appropriate, to impose conditions on parole and such a condition could be a restriction on where a parolee resides, taking into consideration the wishes and concerns of the victim's family.

■ The superior court said that the definition of "victim" in California Constitution article I, section 28, subdivision (e) includes the sister, and, in effect, applies to Penal Code section 3003, subdivision (f). (See 2A Singer, *supra*, § 46:4, pp. 188–189 ["Even when a statute appears unambiguous on its face it can be rendered ambiguous by its interaction with and its relation to other statutes."].) But that constitutional provision says "as used in this section." The provisions of Penal Code section 3003, subdivision (f) are not "used" in that section of the Constitution.

Article I, section 28 of the Constitution does provide certain rights to victims, including notification of the defendant's release date (Cal. Const., art. I, § 28, subd. (b)(12)) and the right to be heard at the parole hearing. (*Id.*, subd. (d).) But section 3003, subdivision (f) is a specific right that a victim or witness has to require that the parolee reside more than 35 miles from the victim or witness so long as the required letter requesting the restriction is sent and the Board finds there is a need to protect the life, safety, or well-being of the victim or witness. These rights and procedures are not the subjects of article I, section 28 of the constitution. Accordingly, the constitutional definition of "victim" in that constitutional section clearly and unambiguously does not apply to section 3003, subdivision (f). (See *People v. Leal* (2004) 33 Cal.4th 999, 1007 [16 Cal.Rptr.3d 869, 94 P.3d 1071] ["The statutory language of the provision defining 'duress' in each of the rape statutes is clear and unambiguous. The definition of 'duress' in both the rape and spousal rape statutes begins with the phrase, 'As used in this section, "duress" means . . . .' (§§ 261, subd. (b), 262, subd. (c).) This clear language

belies any legislative intent to apply the definitions of 'duress' in the rape and spousal rape statutes to any other sexual offenses."]; see also 2A Singer, *supra*, § 47:7, p. 298 ["definitions extend to as much legislation as the general act itself designates"].) If it did, then it would also apply to any code provision in which the word "victim" is used. That could lead to absurd results in certain circumstances. (See, e.g., Lab. Code, § 3553 [victim's eligibility for workers' compensation].) There is no indication that article I, section 28, subdivision (e) was to affect Penal Code section 3003, subdivision (f) or any other specific statute. (See 1A Singer (2009 new ed.) § 23:21, p. 523 ["In every instance where the repeal [of a statutory provision] arises by implication, the constitutional provision or amendment must predicate an irreconcilable conflict (fn. omitted) and also must clearly show that it was intended to affect existing legislation . . . ."].)

Applying section 3003, subdivision (f) to those persons enumerated in article I, section 28, subdivision (e) of the Constitution—i.e., a spouse, parents, children, siblings and others—could result in the parolee being subject to a 35-mile restriction in multiple areas, a result that may not be consistent with the aims of parole. Indeed, a 35-mile restriction would cover much of Los Angeles County. The parole agent said that the "[Department] has traditionally honored the 35-mile residence restriction when requested by victims of violent crimes." Unlike the general authority of the Board to restrict the residency of a parolee, section 3003, subdivision (f) is a statute that imposes a specified mileage restriction for the explicit purpose of protecting the victim and witnesses. To graft onto it additional people who can invoke its application would be inconsistent with the clear meaning of the statute.

Although article I, section 28 of the Constitution does not provide for a residency restriction on the parolee, that section does provide that the victim, including his or her next of kin, has a right "[t]o be reasonably protected from the defendant" (Cal. Const., art. I, § 28, subd. (b)(2)) and to be heard at any postconviction release proceeding (*id.*, subd. (b)(7), (8)). Ms. Coral appeared at parole hearings, and the Board prohibited petitioner from having any contact with Ms. Coral.

██ Section 3003, subdivision (f) could not apply here for another reason: there is not a sufficient basis to support the further requirement of the statute that there be a finding that the restriction fulfills a "need to protect the life, safety, or well-being of a victim . . . ." There is no suggestion that petitioner poses any risk to Ms. Coral's life or safety. He did not know the victim; he did not expressly intend to kill the victim; and he never threatened any member of the victim's family. The parole agent found that the restriction will "protect [Ms. Coral's] well-being, and to protect her from living in fear

and under the stress of knowing that [petitioner] lives in her community." But petitioner does not live in her community. He lives in an entirely separate city. The chance that they would ever see each other is extremely small. The odds of such an encounter are not much less if petitioner lived 36 miles from Ms. Coral.

Ms. Coral's desire in knowing that petitioner will not be able to live anywhere in the area for the rest of his life, irrespective of there being little chance that they would see each other, is not an adequate basis for the "well-being" requirement. If the understandable anguish of a victim's family member satisfied the "well-being" requirement, every request would involve the "well-being" of the person making the request. That would render meaningless the requirement that in order to impose the restriction, the Board find "that there is a need to protect life, safety, or well-being of a victim . . . ." (§ 3003, subd. (f).) Accordingly, the Board incorrectly applied section 3003, subdivision (f).

### D. *Parole Condition*

 As noted, even if the Board could not apply section 3003, subdivision (f) in this case, it can impose a reasonable residency restriction as a condition of parole. (§ 3053.) The California Supreme Court recently said, "The Legislature has given the CDCR and its DAPO [(Department)] expansive authority to establish and enforce rules and regulations governing parole, and to impose any parole conditions deemed proper. (§§ 3052, 3053; see *Terhune v. Superior Court* (1998) 65 Cal.App.4th 864, 874 [76 Cal.Rptr.2d 841] (*Terhune*).) 'These conditions must be reasonable, since parolees retain constitutional protection against arbitrary and oppressive official action.' (*Terhune*, at p. 874; see also *In re Stevens* (2004) 119 Cal.App.4th 1228, 1234 [15 Cal.Rptr.3d 168]; *People v. Thompson* (1967) 252 Cal.App.2d 76, 84 [60 Cal.Rptr. 203].) 'Nevertheless, *the conditions may govern a parolee's residence*, his associates or living companions, *his travel*, his use of intoxicants, and other aspects of his life.' (*Terhune*, at p. 874, italics added; see generally *Morrissey v. Brewer* (1972) 408 U.S. 471, 482 [33 L.Ed.2d 484, 92 S.Ct. 2593] [parolees have fewer constitutional rights than do ordinary persons]; *People v. Burgener* (1986) 41 Cal.3d 505, 531–532 [224 Cal.Rptr. 112, 714 P.2d 1251] (*Burgener*), overruled on other grounds in *People v. Reyes* (1998) 19 Cal.4th 743, 754, 756 [80 Cal.Rptr.2d 734, 968 P.2d 445].) [¶] . . . 'Although a parolee is no longer confined in prison[,] his custody status is one which requires and permits supervision and surveillance under restrictions which may not be imposed on members of the public generally.' (*Burgener, supra*, 41 Cal.3d at p. 531; see *In re Stevens, supra*, 119 Cal.App.4th at p. 1233.)" (*In re E.J., supra*, 47 Cal.4th at pp. 1282–1283, fn. 10.)

A parolee is subject to restrictions that may not be imposed on others. (See *Samson v. California* (2006) 547 U.S. 843 [165 L.Ed.2d 250, 126 S.Ct. 2193]; *In re Hudson* (2006) 143 Cal.App.4th 1, 9 [49 Cal.Rptr.3d 74].) " 'Conditions of parole must be reasonably related to the compelling state interest of fostering a law-abiding lifestyle in the parolee. [Citation.] Thus, a condition that bars lawful activity will be upheld only if the prohibited conduct either 1) has a relationship to the crime of which the offender was convicted, or 2) is reasonably related to deter future criminality. [Citation].' (*In re Stevens*[, *supra*,] 119 Cal.App.4th [at p.] 1234 . . . .)" (*In re Corona* (2008) 160 Cal.App.4th 315, 321 [72 Cal.Rptr.3d 736] [parolee's constitutional right to due process]; see *In re Hudson, supra*, 143 Cal.App.4th at p. 9.)[8]

■ The Board might reasonably prevent petitioner from living near or in the same community of a victim's family member. Such a restriction could have a reasonable relationship to the family member's well-being. But here, petitioner intends to live in an entirely separate area and community, many miles from Ms. Coral. The risk of any contact between petitioner and Ms. Coral is remote. The residence restriction imposed here has no relationship to petitioner's crime and will not deter future criminality. It does not bear on the safety of the victim's family. And, because of the distance involved, it does not reasonably affect their well-being. Under these circumstances, the residence restriction in this case implicates petitioner's due process rights.

For the reasons stated, we conclude that the residence restriction in this case is invalid.

## DISPOSITION

The petition for habeas corpus is granted. The Department is ordered to rescind its restriction on petitioner that he may not reside within 35 miles of Elizabeth Coral. The stay order is dissolved.

Armstrong, Acting P. J., concurred.

**KUMAR, J.,**[*] Dissenting.—

A. *Penal Code*[1] *Section 3003, Subdivision (f) Has Been Rewritten by the Majority*

The majority finds the word "victim" to be unambiguous, then identifies some ambiguity by pointing out that there are various definitions of "victim"

---

[8] The Supreme Court in *In re Shaputis* (2011) 53 Cal.4th 192 [134 Cal.Rptr.3d 86, 265 P.3d 253], which deals with the review of decisions on whether parole should be granted, did not consider any limitation on conditions of parole.

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] All future statutory references are to the Penal Code.

under the law, vows not to rewrite section 3003, subdivision (f), and then rewrites the statute to delete murder victims from its ambit. I respectfully disagree with this approach.

I would avoid rewriting section 3003, subdivision (f) and give "victim" a meaning consistent with the California Constitution. With this approach, a murder victim's sister is a qualifying "victim," has standing to invoke this provision of the statute, and may request the paroling agency require the murderer, as a condition of parole, to live over 35 miles from her residence.

In pertinent part, section 3003, subdivision (f) provides: "[A]n inmate who is released on parole shall not be returned to a location within 35 miles of the actual residence of a victim of, or a witness to, a violent felony as defined in paragraphs (1) to (7), inclusive, and paragraph 16 of subdivision (c) of Section 667.5 . . . if the victim or witness has requested additional distance . . . and if the [appropriate authority] finds that there is a need to protect the . . . well-being of a victim or witness." Section 667.5, subdivision (c)(1) characterizes murder as a violent felony. Thus, it is clear that, if the necessary finding is made, parolees who have committed murder are subject to the victim residency restriction set forth in section 3003, subdivision (f).[2]

But this is no longer true because the majority has altered the plain language of the statute. The majority's definition of "victim" to mean the "person against whom the crime has been committed," has effectively deleted murder as a qualifying crime because, by virtue of the fact that this "victim" is deceased, he or she cannot make a residency restriction request. As a consequence of the majority opinion, section 3003, subdivision (f) may be invoked to prevent a parolee who had committed murder from living within 35 miles of a witness to the murder but it cannot do anything to prevent the parolee from living as near to the murder victim's family as the parolee desires.

The Legislature's express application of the victim residency restriction to parolees who have committed murder has been rendered meaningless by the majority. Such an approach to statutory construction is to be avoided. (*People v. Gomez* (2008) 43 Cal.4th 249, 264 [74 Cal.Rptr.3d 123, 179 P.3d 917].) When interpreting a statute, no part of the statute should be left "useless or devoid of meaning. [Citations.]" (*City and County of San Francisco v. Farrell* (1982) 32 Cal.3d 47, 54 [184 Cal.Rptr. 713, 648 P.2d 935].)

---

[2] In fact, one of the triggering mechanisms for the residency restriction was a mother's concern that her son's murderer—a man who lived across the street from her—was to be released on parole and would return to live in the home across the street. (Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 2408 (1987–1988 Reg. Sess.) Aug. 23, 1988, p. 2.)

There is an easy way to comply with the rules of statutory construction and lend meaning to the provision subjecting parolees who have committed murder to the victim residency restriction. In 2008, voters passed Proposition 9, the "Victims' Bill of Rights Act of 2008: Marsy's Law," which amended article I, section 28 of the California Constitution and defined "a 'victim' " to include "a person who suffers direct or threatened physical, psychological, or financial harm as a result of the commission or attempted commission of a crime" as well as "the person's spouse, parents, children, siblings, or guardian" and "a lawful representative of a crime victim who is deceased . . . ." (Cal. Const., art. I, § 28, subd. (e).)

Proposition 9 was a response to the suffering endured by the family of a college student—Marsy—who was murdered by her boyfriend. (Voter Information Guide, Gen. Elec. (Nov. 4, 2008) text of Prop. 9, § 2, par. 2, p. 128.) While Marsy's boyfriend was on bail, Marsy's mother was shocked to encounter him at a local supermarket. (Voter Information Guide, *supra*, text of Prop. 9, § 2, par. 7, p. 129.) After he was convicted, Marsy's mother suffered a heart attack while arguing against his release at a parole hearing. (Voter Information Guide, *supra*, text of Prop. 9, § 2, par. 8, p. 129.) Proposition 9 sought, in part, to "[i]nvoke the rights of families of homicide victims to be spared the ordeal of prolonged and unnecessary suffering . . . ." (Voter Information Guide, *supra*, text of Prop. 9, § 3, par. 2, p. 129.)

The intent of section 3003, subdivision (f)—to preserve the well-being of victims of violent crime by decreasing the possibility of unnecessary contact with the parolee who committed the crime—meshes with the purpose and history of Proposition 9. A murder victim's parents, spouse, children, and siblings should not be barred, as a matter of law, from requesting a residency restriction pursuant to section 3003, subdivision (f). If their suffering is such that their well-being is adversely affected, they should be entitled to a residency restriction no less than a witness to a murder.

An interpretation of the term "victim" in section 3003, subdivision (f) in a manner consistent with Proposition 9 avoids rewriting the statute and removing parolees who have committed murder from the victim residency restriction. As required by our Supreme Court, it gives meaning to the express inclusion of murder victims in the statute.

B. *Elizabeth Coral's[3] Daily Pain Warranted Petitioner's Residency Restriction*

The California Supreme Court has recently admonished the appellate courts that, if there is a "modicum of evidence" supporting a prison authority's

---

[3] Elizabeth Coral shares the same surname as her sister—victim Gladys Coral. For clarity, further references to these individuals are by first name only.

decision regarding parole, appellate courts must refrain from invading the province of the prison authority to make that decision. (*In re Shaputis* (2011) 53 Cal.4th 192.) The Supreme Court emphasized deference ought to be given to such decisions and, when assessing whether there is the necessary evidence to support a prison authority's exercise of discretion regarding parole, "it is not for the reviewing court to decide *which* evidence . . . is convincing." (*Id.*, at p. 211.) Nonetheless, the majority reweighs Elizabeth's testimony and writes in the alternative, even if section 3003, subdivision (f) includes a murder victim's sister, Elizabeth's testimony did not adequately demonstrate she needed the residency restriction to protect her well-being. Again, I disagree with the majority's approach and its conclusion.

Before he murdered the two victims in this case, petitioner had been twice convicted of driving under the influence of alcohol or drugs. The punishment and treatment he received as a result of those convictions did not render him law abiding. On Thanksgiving night in 1986, while under the influence of PCP and being pursued by the police, he drove 80 miles per hour through a stop sign and struck the vehicle being driven by Gladys's fiancé. Gladys was in the passenger seat. Both occupants of the vehicle were killed.

Elizabeth testified at the parole hearing. During her testimony, she read two letters she had written to petitioner. One of the letters was in the voice of her sister's fiancé (Lavell) and the other in the voice of her sister. Excerpts from the letters shed light on the degree of suffering endured by Elizabeth.

The letter Elizabeth read in Lavell's voice included the following: "I was in love once. I asked my girl to marry me many years ago and she said yes. We had everything going for us. . . . She was such a beautiful girl. She brought me such happiness. . . . You took our lives away from us. We had so much going for us. I had a good job. We were going to start a family and have little ones running around. Gladys, my girlfriend, wanted a lot of kids. You took all of that away from us. . . . I never got a chance to say goodbye to Gladys. I never got to tell her how special she was to me and I couldn't live without her. . . . I hope that you see our faces in your nightmares and I hope that you feel our presence."

In the letter drafted in Gladys's voice, Elizabeth wrote: "I was so pretty back then, so full of hope and dreams. Lavell had just asked me to marry him and I said yes. We were planning to have a family, but couldn't. We were looking forward to a future together, but that didn't happen either. . . . Now, do you remember the night that we met[?] . . . Lavell had just proposed to me and we were sharing the joy with our families that day. We were so excited

and in love. . . . You took all of my hopes and all of my dreams away from Lavell and I. You took my last breath away . . . . I miss feeling the warmth of the sun on my face. I can't dance or sing anymore. . . . I can no longer see my mom, my dad, my sisters and my brothers. I miss them terribly. . . . I hope you see me in your dreams and in your every waking moment for the rest of your life. . . ."

Elizabeth remains haunted by this event. She testified "it still hurts" and that the loss she has endured is "an every day [*sic*] pain . . . ." In selecting a name for her daughter, Elizabeth chose "Gladys"—the name of her sister. Her pain is bona fide. Elizabeth justifiably sought the residence restriction to protect her well-being. There is no requirement, as the majority seems to suggest, that Elizabeth demonstrate there is a particular degree of likelihood she will encounter petitioner in order to be granted the residency restriction. The Department of Corrections and Rehabilitation appropriately found there was a need to protect the well-being of Elizabeth. The victim residency restriction was properly imposed.

## C. *Conclusion*

I did not agree an order to show cause should issue and I would deny the petition for writ of habeas corpus. I respectfully dissent from the majority opinion.