Filed 2/17/21  Angel S. v. Super. Ct. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| ANGEL S.,<br><br>    Petitioner,<br><br>       v.<br><br>THE SUPERIOR COURT OF STANISLAUS COUNTY,<br><br>    Respondent;<br><br>STANISLAUS COUNTY COMMUNITY SERVICES AGENCY,<br><br>    Real Party in Interest. | F082007<br><br>(Super. Ct. Nos. 517910, JVDP-20-000133)<br><br><br>**OPINION** |

## THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  Gloria F. Rhynes, Judge.  (Retired Judge of the Alameda County Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)

John W. Stovall III for Petitioner.

No appearance for Respondent.

Thomas E. Boze, County Counsel, and Maria Elena Ratliff, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]    Before Meehan, Acting P.J., Snauffer, J. and DeSantos, J.

# I

# INTRODUCTION

This is a petition for extraordinary writ challenging the findings and orders of the juvenile court in setting a hearing pursuant to Welfare and Institutions Code section 366.26.[1] (§ 366.26, subd. (*l*); Cal. Rules of Court, rule 8.452.) Petitioner Angel S. (father) is the father of a now four-year-old daughter, E.G., and an 18-month-old son, Malachi G. Father has a history with child protective services because of ongoing domestic violence with the children's mother, Aliya B. (mother).[2] This is the third dependency case involving E.G. and the first involving Malachi. Father contends the juvenile court erred in denying him reunification services under section 361.5, subdivision (b)(10). We grant the petition.

# II

# FACTUAL AND PROCEDURAL BACKGROUND

These dependency proceedings were initiated in June 2020 when the Stanislaus County Community Services Agency (agency) responded to a domestic violence dispute between father and mother (the parents). The parents have a history of domestic violence dating back to April 2017. Mother has a history of substance abuse.

### A. Child Protective History

Mother came to the agency's attention in May 2016 following an incident with her then 16-month-old son, David, from another relationship. The maternal grandmother noticed he was napping longer than usual and appeared very sleepy. She took him to the emergency room where he tested positive for THC and was admitted to the hospital. Mother was provided voluntary family maintenance services until April 2017.

---

**1**      Statutory references are to the Welfare and Institutions Code.

**2**      Mother did not seek extraordinary writ review.

Meanwhile, in January 2017, she gave birth to E.G. Father was offered parenting, counseling and substance abuse services as part of family maintenance.

In March 2017, father punched mother in the face while transporting her and E.G. to a medical appointment. The parents argued after mother received a text message from her high school coach. According to mother, there was " 'blood all over.' " Law enforcement was contacted, and mother was taken to the hospital by ambulance. She told the officer father had " 'repeatedly physically abused her' " throughout 2017. Father was arrested for corporal injury on a spouse or cohabitant. In early April 2017, mother told the family maintenance social worker she was no longer in a relationship with father.

The juvenile court sustained allegations the parents engaged in domestic violence and ordered E.G. removed from father's custody but allowed David and E.G. to remain in mother's custody with family maintenance services. The court granted father family reunification services, ordering him to complete a domestic violence assessment and a parenting program and participate in individual counseling and substance abuse treatment. In March 2018, at the six-month review hearing, the court terminated father's reunification services for failure to comply and allowed David and E.G. to remain in mother's custody with family maintenance services.

Less than a month later, in April 2018, the agency was notified father threatened someone with a gun. The victim was mother's friend, who mother claimed owed her money. The parents confronted the friend in a parking lot. Father "cocked" a gun at her and told her she needed to pay mother back. Mother reminded her friend, " 'I told you there would be consequences.' " The friend reported the children were in the car but did not know if they witnessed the incident. At the time, mother was participating in substance abuse treatment but was not compliant. In early May 2018, she tested positive for cocaine and was discharged from treatment. Later that month, the agency filed a supplemental petition (§ 387) on behalf of David and E.G., alleging mother had unresolved substance abuse issues and failed to adequately protect them.

3.

The juvenile court sustained the supplemental petition in July 2018 and removed the children from parental custody. The court granted mother and David's father reunification services but denied father services because his whereabouts were unknown. Father appeared at a progress hearing in September 2018 and the court ordered him to participate in parenting, substance abuse testing, a substance abuse assessment, and domestic violence and counseling services. Father did not initiate services until November 2018. Consequently, he had attended only two individual counseling sessions and two parenting classes by the six-month review hearing in December 2018. He completed a substance abuse assessment and was not recommended for treatment because he reported six months of sobriety and tested negative for drugs.

By the 18-month review hearing in January 2020, the parents were living together with David, E.G. and Malachi, who was born in July 2019 and allowed to remain in their custody. The parents were employed and completed their case plan requirements except couples counseling. Although they completed most of the counseling sessions, according to their counselor, they were too busy fighting to address the problems in their relationship. In addition, they broke up while engaged in couples counseling and father wanted to leave the relationship again. The counselor could not recommend additional sessions given their unwillingness to apply what they learned. Father completed a 52-week batterer's intervention program and his risk for further abuse/violence was assessed as low. He tested for drugs in January 2020 and the results were negative. Mother, meanwhile, made multiple attempts to complete substance abuse treatment before graduating from First Step on November 1, 2019.

On the agency's recommendation, the juvenile court returned David to mother's custody and E.G. to the parents' custody at the 18-month review hearing in January 2020 and set a family maintenance review hearing on April 21, 2020. The agency was pleased with the parents' progress and had no concerns about their ability to provide for the

children's needs.  The agency was concerned, however, about their ability to work together and hoped another 90 days of couples counseling would foster collaboration.

On April 12, 2020, father was arrested after mother reported he pushed her and hit her with a closed fist on the side of her face.  The three children were in the home when it occurred but were in a different room.  They remained in mother's care and the parents severed their relationship.

On April 21, 2020, the juvenile court granted mother sole legal and physical custody of David and sole physical custody of E.G.  The court granted the parents joint legal custody of E.G.  The court issued a visitation order and dismissed its dependency jurisdiction.

### B.  Current Dependency

On June 22, 2020, at approximately 10:05 p.m., while exchanging custody of the children, the parents engaged in domestic violence in front of E.G. and Malachi.  The exchange occurred at a business location where father was supposed to transfer custody of the children to mother.  He was accompanied by a female who identified herself as father's cousin.  The cousin reported that mother stated she did not want the children.  She wanted to go out and demanded that father keep them.  Father had already removed E.G. from his car.  Mother threw herself on the ground, hit herself, pulled her hair and scratched her face.  She told father he was going back to jail.  After mother got up, she walked over to the front passenger seat where the cousin was sitting and punched her in the face.  Father handed E.G. over to mother and drove off.  The parents contacted the police after the incident.

Mother told the officer she got into a verbal altercation with the female accompanying father whom mother claimed was his girlfriend.  She said the female exited the car when the altercation began.  Father ran over and attempted to punch mother in the face.  However, she shielded her face with her arms, and he hit her right forearm.  She later said he hit her left forearm and was experiencing pain there.  When father saw

that she was calling the police, he attempted to drive away.  However, because mother was standing behind his truck, he had to pull forward and drive over a concrete parking bumper.  According to mother, he nearly ran over E.G.

Father denied having a girlfriend and confirmed his cousin's account.  He also denied hitting mother.

E.G. told the police officer her "daddy punched her mommy in the face."  The officer did not observe any bruises on mother but determined father was the aggressor and arrested and charged him with corporal injury to a spouse or cohabitant.  Mother was issued an emergency protective order.

Mother admitted to the investigating social worker she engaged in domestic violence with father.  She disclosed having bipolar disorder, adding she was taking medication.  She declined to drug test, stating it was not necessary and she did not trust child protective services.

Father said mother became belligerent when she saw his cousin and refused to take the children.  He tried to put E.G. back in his vehicle because mother made it clear she did not want the children at that time.  Mother wanted to fight his cousin and reached through her window and punched her.  He left when mother took E.G. out of the car and began calling the police.  Father was concerned about the children being in mother's care. He believed she was using methamphetamine, cocaine and alcohol around the children and prostituting herself.  E.G. recently told him she saw " 'mom's boyfriend beating her up.' "

On July 2, 2020, the agency took the children into protective custody and filed a dependency petition, alleging the parents' domestic violence and mother's substance abuse placed the children at a substantial risk of harm.  (§ 300, subd. (b)(1).)[3]  The children were placed in foster care.

---

[3]  The petition also alleged a count under section 300, subdivision (g) that the whereabouts of David's father were unknown, and he failed to provide for David.  The

6.

The juvenile court ordered the children detained and the parents were offered services. On July 22, 2020, father submitted a hair follicle and urine sample for drug and alcohol testing and tested negative. He was referred for domestic violence and individual counseling. On August 18, 2020, his clinician reported she met with father four times; the first three sessions were to assess him and develop a plan.

The agency recommended the juvenile court deny father reunification services under section 361.5, subdivision (b)(10)[4] because of his ongoing domestic violence and mother under subdivision (b)(13) because of her resistance to drug treatment. Father acknowledged he and mother had "their own issues of domestic violence" and that the children did not need to witness it. However, he denied physically assaulting mother on June 22, 2020. He described his relationship with her as "toxic" and said they separated. He "found God about two years [before], but ha[d] been falling on and off the wagon." The foster parents reported David and E.G. mimicked their parents fighting during play and pretended to call the police. They made such statements as "[d]ad chocked [*sic*] mom out" and wondered why the foster parents did not fight.

The parents requested a contested hearing which was ultimately conducted over two sessions, beginning on October 27, 2020. Meanwhile, father attended his one domestic violence group session and eight individual counseling sessions. His therapist perceived he was not very concerned about his situation based on statements he made about his faith. He stated, for example, " '[G]od knows what happened so I have faith the truth will come out' " and " 'I know my church family will guide me in the right direction because I have God in my life.' " He told the social worker the criminal charges had been dropped, implying that the dismissal of charges eliminated any cause for concern.

whereabouts of David's father remained unknown and he did not appear in the proceedings.

[4] The agency also recommended the juvenile court deny David's father reunification services under section 361.5, subdivision (b)(10).

The social worker did not believe he had learned or could apply concrete strategies for preventing violence in his relationships. Mother, meanwhile, struggled with sobriety, testing positive for cocaine, amphetamine and ecstasy on September 1, 2020, and the children were on their third placement since June 2020 for reasons unrelated to their behavior.

Mother testified at the contested hearing on October 27, 2020. She acknowledged being a drug addict with a preference for cocaine and methamphetamine. Her relationship with father was domestically violent. She was both a victim and a perpetrator in that relationship. Her relationship with David's father was also domestically violent. She relapsed in mid-June 2020 by using methamphetamine, and in July she began drinking alcohol. In August, she started using cocaine. She was under the influence of methamphetamine on June 22, the day of the custody exchange, having used that day. She confronted the female in the car with father. She acknowledged having problems with anger. She continued to use drugs and tested positive for cocaine, amphetamine and ecstasy on September 1. She entered drug treatment in September 2020 but left on October 2, 2020, against the advice of the agency and her counselor, because it was hard on her mentally. She began intensive outpatient treatment but missed several days in October. She was attending meetings and had a sponsor. She was addressing domestic violence in individual counseling and group sessions.

Father denied any physical violence with mother during the June 2020 incident, including hitting her on the arm or punching her in the face. He believed it was a domestically violent incident but denied yelling or screaming at mother that day. He attributed the problem that day to lack of communication. It would have been better if they met somewhere other than across the street from her house. He considered himself a perpetrator of domestic violence but could not remember ever hitting mother in front of the children. He acknowledged the domestic violence incidents he had with mother were significant but could not remember the last such incident they had. He believed the

domestic violence incidents affected the children.  He did not remember threatening mother's friend with a gun and denied hitting mother in the face on April 12.  He stayed with mother, despite their toxic relationship, because he hoped they could change.  He began attending church and was saved two and a half years before.  He had also been sober for two and a half years.  He conducted support meetings for young people who struggle with addiction and was a sponsor.  Asked whether he had a sponsor, he stated, "My sponsor is God."

The juvenile court continued the hearing before father completed his testimony and recalled the matter on October 30, 2020.  Father testified he attended 13 of the 15 one-on-one counseling sessions and one domestic violence class.  His second class was "coming up."  He believed he needed domestic violence classes because he was still learning.  He did not believe he currently had a problem with domestic violence or anger.  However, he needed counseling to deal with the trauma of having his children removed.  He believed he was a safe parent.  His criminal charges were dismissed for lack of evidence.

Following testimony, the juvenile court took judicial notice of its own case files in the prior dependency cases.  Father's attorney argued section 361.5, subdivision (b)(10) did not apply to E.G. because father did not fail to previously reunify with her sibling or half sibling.  Further, it did not apply to either child because he subsequently made a reasonable effort to address domestic violence by completing services and reunifying.

The juvenile court denied the parents, including David's father, reunification services as recommended and set a section 366.26 hearing for March 1, 2021.  Regarding father, the court adopted the reasoning of *In re I.A.* (2019) 40 Cal.App.5th 19 (*I.A.*) to find that section 361.5, subdivision (b)(10) applied to E.G. and found father failed to make reasonable efforts to treat his propensity for domestic violence.

9.

# III.

# DISCUSSION

The juvenile court denied father reunification services under section 361.5, subdivision (b)(10), which provides:

> "Reunification services need not be provided to a parent … when the court finds, by clear and convincing evidence, … [¶] (10) [t]hat *the court ordered termination of reunification services for any siblings or half siblings of the child* because the parent … failed to reunify with the sibling or half sibling after the sibling or half sibling had been removed from that parent … and that parent … has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from that parent …." (§ 361.5, subd. (b)(10), italics added.)

Father contends the statute does not apply to E.G. because he did not fail to reunify with her sibling or half sibling, and he made reasonable efforts to treat his domestic violence issues. He does not dispute the statute applies to Malachi insofar as the juvenile court terminated reunification services for E.G., Malachi's half-sibling. He contends, however, the statute is inapplicable to Malachi because he made subsequent reasonable efforts to treat the problem that necessitated E.G.'s removal. We concur.

There is a split of authority among appellate courts whether a parent can be denied reunification services under the statute when a single child such as E.G. is the subject of multiple dependencies. *In re Gabriel K.* (2012) 203 Cal.App.4th 188 (*Gabriel K.*) and *I.A.*, *supra*, 40 Cal.App.5th 19 represent the view that the statute is ambiguous with regard to whether the same child qualifies as a sibling or half sibling. *In re B.L.* (2012) 204 Cal.App.4th 1111 (*B.L.*) and *J.A. v. Superior Court* (2013) 214 Cal.App.4th 279 (*J.A.*) concluded the statute is not ambiguous and declined to follow *Gabriel K.*

Real party in interest contends this court should adopt the reasoning of *Gabriel K.* and *I.A.* We decline to do so and conclude the statute is inapplicable to E.G. We further

conclude the statute is inapplicable to Malachi because father made reasonable efforts to treat his domestic violence issues.

### A.     Section 361.5

The purpose of section 361.5 was explained in *Renee J. v. Superior Court* (2001) 26 Cal.4th 735 (*Renee J.*).  " 'As a general rule, reunification services are offered to parents whose children are removed from their custody in an effort to eliminate the conditions leading to loss of custody and facilitate reunification of parent and child.  This furthers the goal of preservation of family, whenever possible.  [Citation.]  Nevertheless, as evidenced by section 361.5, subdivision (b), the Legislature recognizes that it may be fruitless to provide reunification services under certain circumstances.  [Citation.]  Once it is determined one of the situations outlined in subdivision (b) applies, the general rule favoring reunification is replaced by a legislative assumption that offering services would be an unwise use of governmental resources.  [Citation.]' "  (*Id*. at p. 744.)

"As pertinent," the *Renee J.* court continued, "the Legislature intended to restrict provision of reunification services in the case of a parent who previously had failed to reunify.  'The exception at issue here, section 361.5, subdivision (b)(10), recognizes the problem of recidivism by the parent despite reunification efforts.  *Before this subdivision applies, the parent must have had at least one chance to reunify with a different child* through the aid of governmental resources and fail to do so.  Experience has shown that with certain parents, … the risk of recidivism is a very real concern.  Therefore, *when another child of that same parent is adjudged a dependent child, it is not unreasonable to assume reunification efforts will be unsuccessful*.  Further, the court may still order reunification services be provided if the court finds, by clear and convincing evidence, that reunification is in the best interests of the child.  (§ 361, subd. (c).)' "  (*Renee J.*, *supra*, 26 Cal.4th at pp. 744–745, italics added.)

*Gabriel K*. expanded the statute to authorize the denial of reunification services to a parent for a child where the court previously terminated reunification services as to that

"same child."  The court in *I.A.* expanded the statute even further to apply it to the "same children."

### B. The "Same Child"

In *Gabriel K.*, the child was removed from parental custody and his mother was provided reunification services but failed to take advantage of them.  The juvenile court ordered them terminated.  The child's father reunified with him but subsequently permitted the mother to have custody.  Sometime later, the child was again removed from parental custody.  At the dispositional hearing, the mother opposed the recommendation to deny her services pursuant to section 361.5, subdivision (b)(10), arguing the subdivision only applied when services were terminated in the case of a sibling or half sibling.  The juvenile court denied the mother reunification services.  (*Gabriel K.*, *supra*, 203 Cal.App.4th at pp. 191–194.)

On appeal, the reviewing court found the subdivision ambiguous, and "[r]ather than applying technical rules of statutory construction," construed the subdivision in a manner consistent with the Legislature's intent.  (*Gabriel K.*, *supra*, 203 Cal.App.4th at p. 195.)  The court found *Renee J.* instructive, stating, "We are guided in our analysis by [*Renee J.*'s] construction of a different clause of the same subdivision.  Finding that the clause was ambiguous, the court concluded that the typical canons of statutory construction provided little assistance in resolving that ambiguity."  (*Gabriel K.*, at p. 195.)  The court affirmed the denial of services as "consistent with the legislative intent" and "within the spirit of the statute."  (*Id.* at p. 196.)

Shortly after the decision in *Gabriel K.*, *B.L.* considered the interpretation of section 361.5, subdivision (b)(10) in circumstances similar to those in *Gabriel K.*; i.e., the same child was twice the subject of dependency proceedings and the parents were denied reunification services in the second proceeding pursuant to subdivision (b)(10).  The court in *B.L.* disagreed with the analysis in *Gabriel K.*, finding the statutory language was not ambiguous and the "plain language of the statute is limited to cases in which there

was a previous 'termination of reunification services for any *siblings or half siblings* of the child ….' (§ 361.5, subd. (b)(10).)" (*B.L.*, *supra*, 204 Cal.App.4th at p. 1116.)[5]

A year after the *B.L.* decision, the court in *J.A.* also declined to follow *Gabriel K.* In *J.A.*, a father's reunification services were terminated, the child was placed in the custody of her mother and dependency was terminated. A year later, the child was removed from mother's custody. The juvenile court denied the father reunification services under section 361.5, subdivision (b)(10). The father initiated writ proceedings. (*J.A.*, *supra*, 214 Cal.App.4th at pp. 281–283.) The court granted relief, concluding the limiting language in section 361.5, subdivision (b)(10) is not ambiguous. (*J.A.*, at pp. 284–285.) The court stated:

> "As did the court in *B.L.*, we presume the Legislature meant what it said. [Citation.] When the language is not ambiguous, the plain meaning of the language governs. [Citation.] We further agree with the court in *B.L.* that we may not rewrite the clear language of an unambiguous statute to broaden its application. [Citation.] Extending subdivision (b)(10) to include the same child is a matter for the Legislature to address." (*J.A.*, *supra*, 214 Cal.App.4th at p. 284.)

*I.A.*, the most recently published case on the "same child" issue, involved two siblings who were first removed from their mother because of ongoing domestic violence and neglect. At the close of the first dependency, the mother's reunification services were terminated, and the father was granted full custody. Approximately two years later, the children were removed from the father and placed with the mother as the previously noncustodial parent. The second dependency resulted in the termination of the father's reunification services and the mother receiving full custody. Three years after the first dependency, the children were removed from the mother's care for the same

---

[5] The *B.L.* court affirmed the juvenile court's denial of services order, however, concluding the parents were not eligible for reunification services under section 361.5 because the child was not removed from his parents' custody but from the custody of his guardian grandparents. (*B.L.*, *supra*, 204 Cal.App.4th at pp. 1116–1117.)

reasons as previously. The services agency recommended the juvenile court deny the parents reunification services under section 361.5, subdivision (b)(10). (*I.A.*, *supra*, 40 Cal.App.5th at pp. 21–22.) The juvenile court, however, declined, interpreting the children as being "the same child" under section 361.5, subdivision (b)(10). (*I.A.*, at p. 22.) Acknowledging the split in authority, the juvenile court agreed with *B.L.* the plain language of the statute did not permit denial of reunification services for the "same child." The court determined the children were the "same child" because they were the same two minors removed from the mother in the dependency case when she failed to reunify. The court declined to consider each child as the sibling of the other and deny services because to do so would produce the " 'incongruous result that, if a parent has one child only under this scenario, he or she is entitled to reunification services, but, if he or she has more than one child, he or she is not.' " (*Id*. at pp. 24–25.)

The court in *I.A.* reversed and remanded the case to the juvenile court to enter an order denying the parents reunification services and setting a section 366.26 hearing not because section 361.5, subdivision (b)(10) applied to them as siblings of each other but because the statute applied to them as the "same children." (*I.A.*, *supra*, 40 Cal.App.5th at pp. 28–29.)[6] The court concurred with the reasoning of *Gabriel K*. that the statute can apply to the "same child" or "same children." The court concluded the statute was ambiguous as to whether the children could be considered a sibling to the other, concurring with the juvenile court that treating them as such would produce the " 'incongruous result' " identified by the juvenile court. The court declined to follow the

[6] We question the necessity of considering the children the "same child" in order to apply the statute when it clearly applied by its express terms. The juvenile court terminated the mother's reunification services as to the children, they were subsequently removed, and the mother failed to make reasonable efforts in the interim to treat the problem that led to their removal. They were each the subject of the termination of services order and the second dependency action. Thus, they each had a sibling for whom services were previously terminated and they were each the "child" removed because the parent failed to make subsequent reasonable efforts.

14.

reasoning of *B.L.* and *J.A.* to avoid the unintended consequence where services are provided to a parent even though it is not in the child's best interest. (*I.A.*, at pp. 26–28.)

We find the reasoning in *B.L.* and *J.A.* persuasive and sound and decline to follow *Gabriel K.* and *I.A.* We discern no ambiguity in the language of section 361.5, subdivision (b)(10). On the contrary, it is very precise. It requires, for services to be denied under that subsection, a finding "[t]hat the court ordered termination of reunification services for *any siblings or half siblings of the child because the parent … failed to reunify with the sibling or half sibling after the sibling or half sibling had been removed from that parent ….*" (§ 361.5, subd. (b)(10), italics added.) Consequently, there was no need to interpret it. Even if there was, *Renee J.* does not support the inclusion of "same child" or "same children."

*Renee J.* addressed a former version of section 361.5, subdivision (b)(10), then subdivided into two parts, subpart (A), which pertained to a parent whose reunification services to a sibling or half sibling were terminated, and subpart (B) (now § 361.5, subd. (b)(11)), which pertained to a parent whose parental rights to a sibling or half sibling were terminated. Subpart (B) included the additional language requiring the juvenile court to also find the parent had not " '*subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half-sibling of that child from that parent ….*' " (former section 361.5, subd. (b)(10), italics added.)[7] The question before the *Renee J.* court was whether the "reasonable effort" clause applied to subparts (A) *and*

---

[7]     Section 361.5, subdivision (b)(10) authorized the denial of services on a finding " '[t]hat (A) the court ordered termination of reunification services for any siblings or half-siblings of the child because the parent … failed to reunify with the sibling or half-sibling after the sibling or half-sibling had been removed from that parent … and that parent … is the same parent … described in subdivision (a), or (B) the parental rights of a parent … over any sibling or half-sibling of the child had been permanently severed, *and that, according to the findings of the court, this parent … has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half-sibling of that child from that parent ….*' " (*Renee J.*, *supra*, 26 Cal.4th at p. 739.)

15.

(B) or just to subpart (B). The court found the statute ambiguous as to the application of the reasonable effort clause and held that it applied only when parental rights were severed. (*Renee J.*, *supra*, 26 Cal.4th at pp. 739–740, 748–749.) The court found little assistance in the canons of construction in resolving the ambiguity, looking instead to the legislative purpose of the statute. (*Id*. at pp. 740, 743–745.) Following the court's decision, the Legislature restructured section 361.5, subdivision (b)(10), creating a new subparagraph (b)(11) and clarifying the "reasonable effort" finding applied to both former subparts (A) and (B). (Stats. 2001, ch. 653, § 11.3.)

Though *Renee J.* is not illustrative with respect to whether the current version of section 361.5, subdivision (b)(10) is ambiguous, it nevertheless reveals the statute was intended to apply to *another child*. In explaining the statute's purpose, the court stated, " 'Before this subdivision applies, the parent must have had at least one chance to reunify with *a different child* through the aid of governmental resources and failed to do so. Experience has shown that with certain parents … the risk of recidivism is a very real concern. Therefore, when *another child* of that same parent is adjudged a dependent child, it is not unreasonable to assume reunification efforts will be unsuccessful.' " (*Renee J.*, *supra*, 26 Cal.4th at pp. 744–745, italics added.)

By interpreting section 361.5, subdivision (b)(10) as they did, the *Gabriel K.* and *I.A.* courts were attempting to avoid the situation where a parent with one child is given repeated chances to reunify to the detriment of the child. However, where, as here, the statute is not ambiguous, an appellate court may not "rewrite the clear language of [a] statute to broaden the statute's application." (*In re David* (2012) 202 Cal.App.4th 675, 682.)

We conclude the juvenile court erred in denying father reunification services as to E.G. under section 361.5, subdivision (b)(10) because it did not previously terminate his reunification services as to another child of his who was E.G.'s sibling or half sibling. Further, even if we were to apply the statute to E.G. under the "same child" rationale, we

16.

would reverse the juvenile court's denial of services order as to both children concluding, as we now explain, because father made reasonable subsequent efforts.

### C.  *Reasonable Efforts*

"The reasonable effort requirement focuses on the extent of a parent's efforts, not whether he or she has attained 'a certain level of progress.'  [Citation.]  'To be reasonable, the parent's efforts must be more than "lackadaisical or half-hearted." '  [Citation.]  However, '[t]he "reasonable effort to treat" standard "is not synonymous with 'cure.' " ' "  (*R.T. v. Superior Court* (2012) 202 Cal.App.4th 908, 914 (*R.T.*).)

"We do not read the 'reasonable effort' language in the bypass provisions to mean that *any* effort by a parent, even if clearly genuine, to address the problems leading to removal will constitute a reasonable effort and as such render these provisions inapplicable.  It is certainly appropriate for the juvenile court to consider the *duration*, *extent and context* of the parent's efforts, as well as any other factors relating to the *quality and quantity* of those efforts, when evaluating the effort for reasonableness.  And while the degree of progress is not the *focus* of the inquiry, a parent's progress, or lack of progress, both in the short and long term, may be considered to the extent it bears on the *reasonableness* of the effort made."  (*R.T.*, *supra*, 202 Cal.App.4th at p. 914.)

"Simply stated, although success alone is not the sole measure of reasonableness, the *measure* of success achieved is properly considered a factor in the juvenile court's determination of whether an effort qualifies as reasonable."  (*R.T.*, *supra*, 202 Cal.App.4th at p. 915.)

We review an order denying reunification services under subdivision (b) of section 361.5 for substantial evidence, bearing in mind the juvenile court was required to apply the heightened clear and convincing evidence standard of proof.  (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 96; *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995–996.)  When the juvenile court is required to apply the clear and convincing standard of proof, "the question before the appellate court is whether the record as a

17.

whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*O.B.*, at p. 1011.)

Following the termination of his reunification services in March 2018 and another opportunity to reunify with E.G., father achieved and maintained sobriety and completed a yearlong batterer's intervention program. When the juvenile court granted him legal custody and terminated its dependency jurisdiction in April 2020, father's risk of further abuse or violence was considered "low" and the agency was pleased with his progress and had no concerns about returning the children to his custody. However, just weeks before he was granted custody, he was arrested following a domestic violence incident with mother in April 2020. The incident that prompted these dependency proceedings occurred just two months later.

The juvenile court found father failed to make reasonable efforts to treat his domestic violence because he remained in "deep" denial about his domestic violence problem. Indeed, he was evasive when asked to recall the last incident of domestic violence between himself and mother and denied engaging in domestic violence in front of the children despite statements from the children that he had. Domestic violence was a recurrent theme across the multiple dependencies.

However, while father's denial raises serious questions about the degree to which he benefitted from domestic violence services, we cannot say by the standard we must apply here that he failed to make reasonable efforts to treat his domestic violence problem. His commitment and success in previously reunifying with the children demonstrate he is capable of meaningfully engaging in and completing a long-term treatment plan in order to parent his children. Further, he wasted no time in initiating domestic violence and individual counseling following the children's detention in July 2020. By the contested hearing, he had over two years of sobriety and was in active recovery. He also assisted the recovery of others by acting as a group leader and sponsor. Further, although by no means a justification for father's conduct, it bears noting that

mother was a significant contributor to their conflict. She was aggressor as well as victim in their relationship and was under the influence of methamphetamine during their last recorded incident in June 2020. As long as they had to have personal contact to handle matters regarding their children and even one of them chose to act on their aggression, domestic violence would remain a possibility. However, under the circumstances presented here, we conclude the juvenile court's finding father failed to make reasonable efforts to treat his propensity for domestic violence subsequent to the termination of his reunification services as to E.G. is not supported by substantial evidence.

The juvenile court erred in denying father reunification services under section 361.5, subdivision (b)(10). The order denying father reunification services and setting a section 366.26 hearing must be vacated. A new dispositional hearing must be set to consider whether reunification services will be offered to father or denied on some other ground.

## DISPOSITION

The petition is granted. Let an extraordinary writ issue directing the juvenile court to vacate its October 30, 2020 order denying father reunification services with respect to E.G. and Malachi and setting a hearing under section 366.26. The court shall conduct a new dispositional hearing to consider whether to order reunification services for father. This court's decision is final forthwith as to this court pursuant to rule 8.490(b)(2)(A) of the California Rules of Court.

19.