162 Wis.2d 607 (1991)
470 N.W.2d 1
IN the INTEREST OF F.Q., J.Q., C.Q., M.Q. and H.R., Children Under the Age of Eighteen: N.Q., Appellant,[]
v.
MILWAUKEE COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent.
No. 90-1240.
Court of Appeals of Wisconsin.
Submitted on briefs February 5, 1991.
Decided April 30, 1991.
*609 For the appellant N.Q. the cause was submitted on the briefs of S. Abrahamson & Associates, S.C. by Chris R. Velnetske, of Milwaukee.
For J.Q. the cause was submitted on the briefs of Joseph G. Alioto, of Milwaukee.
For the respondent the cause was submitted on the briefs of E. Michael McCann, district attorney, by Lisa Peterson Fricker, assistant district attorney, of Milwaukee.
Before Moser, P.J., Sullivan and Fine, JJ.
MOSER, P.J.
N.Q. appeals from the dispositional order finding her children in need of protection and services (CHIPS) pursuant to sec. 48.13(8), Stats. N.Q. raises two issues on this appeal. They are that the summary judgment procedure under sec. 802.08, Stats., of the Code of Civil Procedure does not apply to CHIPS proceedings, and, even if it does, the trial court erred in granting the summary judgment because there were material issues of fact. Because the civil procedure of summary judgment is applicable to CHIPS proceedings, *610 and because there were no material issues of fact, we affirm.
The record reflects that the children of N.Q. were determined to be in need of protective services since January 20, 1986. Legal custody of the six children was transferred to the Milwaukee County Department of Social Services (MCDSS). As a result of N.Q.'s treatment of the children, their physical custody was placed in foster homes pursuant to secs. 48.13(10), 48.345 and 48.355, Stats. They were placed for a one-year period with conditions required of N.Q. Because the conditions were never met, the disposition of the children was extended for 1987 and through most of 1988 pursuant to sec. 48.365, Stats.[1] A proceeding to extend the dispositional order was commenced in 1988, but because the trial court lost jurisdiction due to the untimeliness of the hearing, it was dismissed on November 9, 1988.[2] Thus, legal custody technically reverted to N.Q. on that dismissal.
The state, however, filed a new CHIPS petition that same day, November 9, 1988, and on receipt of the CHIPS petition, the trial court set the fact-finding hearing for November 30, 1988. The trial court also sua sponte found, pursuant to sec. 48.19(1)(c), Stats., that the MCDSS should take physical custody of the children. Because N.Q. was in Taycheedah women's prison, the CHIPS petition filed that day was predicated on her inability to care for the children's needs because of her incarceration pursuant to sec. 48.13(8), Stats.
On November 18, 1988, the state filed a motion for summary judgment pursuant to sec. 802.08, Stats., relating *611 that because of N.Q.'s imprisonment, she was unable to care for the children's needs and because there were no material issues of fact, it was clear that there was no need for a fact-finding hearing as required under sec. 48.31, Stats. The summary judgment motion was set for November 30, 1988, the same date as the fact-finding hearing. At the close of the fact-finding hearing, the trial court, noting that N.Q. was in prison, held that the children were in need of protective services, and granted summary judgment because there were no material issues of fact and the law was clear that protective services were appropriate.
The dispositional hearing was held separately on several dates, which were January 18, February 28, March 1, April 27, June 26, June 28 and June 29, 1989. At the close of that extended hearing, the trial court ordered that in the best interests of the children, their legal custody should be placed with MCDSS. Further, it ordered that F.Q.'s physical custody should be with the Agnello foster home, and that the balance of the children should remain in the foster home placement that had existed since the original placement as a result of the 1986 disposition. The trial court also set forth certain enumerated prerequisite conditions for the children's return to N.Q.
[1-6]
N.Q. first argues that the summary judgment civil procedure is not appropriate for CHIPS proceedings, because the juvenile code alone applies to such matters. N.Q. is wrong. CHIPS proceedings are civil proceedings.[3] As such, the Code of Civil Procedure, chs. 801-47 of the statutes, can be employed in certain proceedings under ch. 48. These chapters of the Code of Civil Procedure *612 govern practice in the circuit courts in this state, whether deemed a civil action or special proceeding, and whether cognizable as cases at law, equity, or of statutory origin, except when a different procedure is prescribed by statute or rule.[4] The Children's Code, ch. 48, is of statutory origin, and thus, is controlled by the Code of Civil Procedure unless a specific statute within the Children's Code requires a different procedure.[5] Where particular chapters of the statutes provide specific direction, comparable parts of the Code of Civil Procedure are then not applicable.[6] This is simply an application of the statutory construction rule that a particular statute controls and exists as an exception to a general statute covering the same subject matter.[7] Because no section in the Children's Code provides a procedure different from sec. 802.08, Stats., for summary judgment, it is therefore available in CHIPS cases.[8] Clearly, summary judgment, in this factually limited case, is consistent with the statutory procedures set forth in ch. 48.[9]
[7]
N.Q. further argues that if summary judgment is appropriate, then the trial court still erred for failing to comply with the twenty-day notice required of sec. *613 802.08(2), Stats. Here, the trial court held the summary judgment hearing on November 30, 1988. N.Q.'s attorney had been given written notice on November 18, 1988. As discussed above, N.Q. argued that because there was no procedure in ch. 48 for summary procedure, it could not be used. The trial court rejected that argument and granted summary judgment. Nowhere in the trial court record did N.Q. argue that the time limits in the summary judgment statute were not preserved.[10] N.Q. only argued that summary judgment was unavailable. Our supreme court has held that failure to object in the trial court to the nonadherence of time limitations in summary judgment statutes cannot be raised for the first time on appeal.[11] Because of that failure, we reject this part of the argument on appeal because the issue was waived.
N.Q. finally argues that even if summary judgment was available, the trial court erred because there were material issues of fact noted in the record of the November 9, and November 11, 1988, hearings. N.Q. argues that because on those particular dates she technically had legal custody and the court ignored her desires and her right to have her children placed with her mother E.V., pursuant to sec. 48.60(2)(a), Stats., it erred in granting summary judgment.
The legal custody of the children had been placed with MCDSS in 1986 and since then, the children had been placed in various foster homes. However, on the November 9, 1988, motion to extend the dispositional order of custody for placement of the children pursuant *614 to sec. 48.365, Stats., the trial court found that it had lost jurisdiction. It dismissed the extension of disposition request before it. This technically left custody with N.Q., who was incarcerated at the woman's prison at the time. At that November 9 hearing, after determining that it had no jurisdiction for the extension, the trial court invoked its authority under sec. 48.19(1)(c), Stats., to take the children into custody in their best interests, and to retain their placement in the respective foster home facilities in which they were presently residing. The court did so under the authority of sec. 48.207(1)(c), Stats. The trial court followed this action by ordering a custodial hearing pursuant to sec. 48.21, Stats., for that same afternoon. At the request of N.Q., the trial court recused itself, but ordered the mandatory hearing to be held the following morning before a court commissioner. In the interim, between the dismissal of the dispositional extension for lack of jurisdiction and the November 9 afternoon custody hearing, the state filed a new CHIPS petition pursuant to sec. 48.13(8), Stats. The petition stated that due to N.Q.'s incarceration at the state penitentiary for women, she was incapable of meeting the children's needs. The court commissioner found probable cause that N.Q. was unable to provide for the five children, pursuant to sec. 48.205(1)(b), Stats., because of her incarceration. He set the fact-finding hearing before the trial court and ordered nonsecure placement of the children at the foster homes as alternative facilities for placement with their relatives.
The new trial judge held a mandatory hearing on November 11, 1988, as required under sec. 48.21, Stats., to determine custody pending the fact-finding hearing. At that hearing, the trial court accepted an offer of proof statement of the assistant district attorney as to what the various witnesses at a fact-finding hearing would *615 testify about. The trial court also took testimony from N.Q. and the maternal grandmother E.V. The trial court ordered placement of the children to remain as it was and an interstate compact evaluation of E.V.'s home in Illinois as a possible placement for the children. At the close of the hearing, the assistant district attorney announced that he was going to employ the summary judgment procedure authorized by sec. 802.08, Stats., at the fact-finding hearing set for November 30, 1988.
At the November 30, 1988, hearing after receiving all of the court records, proceedings, affidavits and files, the trial court determined that there were no material issues of fact under sec. 48.13(8), Stats., because N.Q. was incarcerated and the children were in need of protective services. It determined that the state properly utilized the civil procedure summary judgment authorized under sec. 802.08, Stats. The trial court then set the dispositional hearing to commence January 19, 1989.
The purpose of summary judgment is to determine whether a dispute can be resolved without a trial. Appellate and trial courts must use the same methodology in applying summary judgment. That is:
Under that methodology, the court, trial or appellate, first examines the pleadings to determine whether claims have been stated and a material factual issue is presented. If the complaint . . . states a claim and the pleadings show the existence of factual issues, the court examines the moving party's affidavits for evidentiary facts admissible in evidence or other proof to determine whether that party has made a prima facie case for summary judgment. To make a prima facie case for summary judgment, a moving defendant must show a defense which would *616 defeat the claim. If the moving party has made a prima facie case for summary judgment, the court examines the affidavits submitted by the opposing party for evidentiary facts and other proof to determine whether a genuine issue exists as to any material fact, or reasonable conflicting inferences may be drawn from the undisputed facts, and therefore a trial is necessary.
Summary judgment methodology prohibits the trial court from deciding an issue of fact. The court determines only whether a factual issue exists, resolving doubts in that regard against the party moving for summary judgment.[12]
[8]
N.Q. argues that there were material issues of fact because at the November 9, 1988, hearing N.Q. was vested with custody and the trial court ignored her wishes to have the children placed with her mother E.V., and because it further ignored the testimony of E.V. that her home was available. N.Q. ignores the fact that at the November 9 and November 11, 1988, hearings three important factors were brought out that belie her argument. They are that before physical and legal placement could be accomplished, the court must require an interstate compact investigation of E.V.'s home in Illinois as noted by the state in its stipulated facts. N.Q. also ignores E.V.'s testimony that she was currently employed and would not retire for a month after that date, and thus, was unavailable for immediate transfer of the children. Finally, N.Q. also ignores her own testimony on the subject of transfer of physical custody to *617 E.V. made at the November 11, 1988, hearing which reads as follows:
Q Would you like the court to consider having the children placed in the home of your family?
A Yes, I want that. It would be the best.
Q And do you understand that before there is any change in placement thereit will be necessary to conduct an investigation of a new placement?
A Yes.
Q And would you like the judge to order that those investigations be conducted?
A Yes.
Like the trial court, we have examined all of the court records, proceedings, motions, affidavits and files, including the various transcripts of the November 9 and November 11, 1988, hearings. Given the three factors above, the trial court did not commit error in not transferring physical custody of the children based on the evidence before it at the November 9 and November 11 hearings. Because there were no material issues of fact at either of these hearings or at the summary judgment hearing on November 30, summary judgment was proper.
By the Court.Order affirmed.
NOTES
[] Petition to review denied.
[1] As of July 1987, one of the children is no longer living in the jurisdiction of the court.
[2] See sec. 48.365(6), Stats. In re L.M.C., 146 Wis. 2d 377, 389, 432 N.W.2d 588, 593-94 (Ct. App. 1988).
[3] See In re S.S.K., 143 Wis. 2d 603, 611, 422 N.W.2d 450, 453 (Ct. App. 1988).
[4] See sec. 801.01(2), Stats.
[5] See In re C.E.W., 124 Wis. 2d 47, 53, 368 N.W.2d 47, 50-51 (1985).
[6] See In re Berth, 157 Wis. 2d 717, 719-21, 460 N.W.2d 436, 437-38 (Ct. App. 1990).
[7] See Gottsacker Real Estate Co. v. State, 121 Wis. 2d 264, 269-70, 359 N.W.2d 164, 167-68 (Ct. App. 1984); Mock v. Czemierys, 113 Wis. 2d 207, 210, 336 N.W.2d 188, 189 (Ct. App. 1983).
[8] See In re C.E.W., 124 Wis. 2d at 53, 368 N.W.2d at 51.
[9] See id. (Section 805.13(3), Stats., dealing with instruction conferences, was used for ch. 48 proceedings.)
[10] We note that counsel for F.Q., one of the children, made this argument. However, F.Q. did not appeal from any order of the trial court.
[11] See Sambs v. Nowak, 47 Wis. 2d 158, 170-71, 177 N.W.2d 144, 150 (1970).
[12] Miller v. Minority Brotherhood of Fire Protection, 158 Wis. 2d 589, 597, 463 N.W.2d 690, 693 (Ct. App. 1990) (quoting In re Cherokee Park Plat, 113 Wis. 2d 112, 116, 334 N.W.2d 580, 582-83 (Ct. App. 1983) (citations omitted)).