[No. A135044. First Dist., Div. One. July 10, 2012.]

MELISSA R., Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
SAN FRANCISCO HUMAN SERVICES AGENCY et al., Real Parties in
Interest.

COUNSEL

Law Offices of Mark R. Murray and Mark R. Murray for Petitioner.

Dennis J. Herrera, City Attorney, Kimiko Burton, Lead Attorney; Gordon-Creed, Kelley, Holl and Sugerman, Jeremy Sugerman and Anne H. Nguyen for Real Party in Interest San Francisco Human Services Agency.

OPINION

**MARGULIES, Acting P. J.**—At the conclusion of the dispositional hearing for C.R. (born Sept. 2006), the San Francisco Superior Court, Juvenile Division, denied reunification services for Melissa R. (Mother) pursuant to Welfare and Institutions Code[1] section 361.5, subdivision (b)(10), and set the matter for a hearing under section 366.26 to select a permanent plan for C.R.

■ Mother challenges these orders by petition for extraordinary writ. As discussed below, we conclude in this case of first impression that the juvenile court erred in denying reunification services under section 361.5, subdivision (b)(10). The evidence showed a half brother of C.R.'s had previously been removed from Mother's custody, and Mother subsequently failed to reunify with him, but it also showed the half sibling had been removed pursuant to Wisconsin law, and not "pursuant to Section 361" as the statute expressly requires. Accordingly we grant Mother's petition.

## I. BACKGROUND

Mother admitted she began using heroin when she was still a minor and had been an addict for many years. When she became pregnant with C.R., however, she became "really serious" about overcoming her addiction, completed a residential treatment program in 2006, began a methadone maintenance program, and remained drug free until 2011. In April 2011, James R., Mother's husband and C.R.'s father, died. It was some months after this event that Mother relapsed and began injecting methamphetamine. In early October 2011, Mother was hospitalized and remained there for some six weeks as she was treated for endocarditis, an inflammation of the inner lining of the heart. A medical social worker at St. Luke's Hospital reported this condition was "probably associated" with Mother's methamphetamine abuse.

The San Francisco Human Services Agency (Agency) detained C.R. on October 8, 2011, after Mother's hospitalization, and filed its initial dependency petition four days later. In its detention report filed the same date, the

---

[1] All statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

Agency expressed concern about whether the friend with whom Mother had left C.R. would be able to care for him adequately during Mother's anticipated six-week stay in the hospital. The juvenile court formally ordered detention on November 4.

An amended dependency petition filed February 22, 2012, set out a number of allegations under section 300, subdivisions (b) and (j). On March 5, Mother submitted to, and the juvenile court sustained, the following jurisdictional facts: Mother's ability to care for the minor was impaired due to a long history of substance abuse for which she was currently on methadone treatment, she had been abusing methamphetamine as recently as two days before her hospitalization, and she required treatment for substance abuse; Mother's ability to care for the minor was impaired because she had been hospitalized for six weeks due to a serious medical condition; at the time of her hospitalization, Mother had untreated mental health issues requiring assessment and treatment; and the minor's half sibling, M.R., had been the subject of a dependency proceeding in Grant County, Wisconsin, Mother had failed to reunify with M.R., and M.R. was currently in the care of his maternal grandmother under a legal guardianship.

The Agency initially recommended services for Mother. After learning of the earlier dependency proceeding in Wisconsin, however, it recommended instead that the juvenile court deny reunification services based on Mother's failure to reunify with C.R.'s half sibling, and also based on Mother's "recent non-compliance" with substance abuse treatment.

At the conclusion of the contested dispositional hearing on March 15, 2012, the juvenile court found by clear and convincing evidence that "Mother ha[d] failed to reunify with a sibling [and] ha[d] not subsequently made a reasonable effort to treat the problems that led to the removal of the sibling." On that basis the court denied reunification services for Mother pursuant to section 361.5, subdivision (b)(10), and set the matter for a hearing under section 366.26.

Mother's petition followed. (See § 366.26, subd. (*l*).)

## II. Discussion

■ "[U]p until the time the section 366.26 hearing is set, the parent's interest in reunification is given precedence over the child's need for stability and permanency." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 310 [19 Cal.Rptr.2d 544, 851 P.2d 826].) Thus at the time of the dispositional hearing, when a dependent child is ordered removed from the parent's custody under section 361, the standard of proof for removal is by clear and convincing evidence,

and if the child is ordered removed the juvenile court must make orders regarding reunification services. (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 248 [19 Cal.Rptr.2d 698, 851 P.2d 1307]; see § 361, subd. (c).) The dependency scheme generally entitles a parent to receive a minimum period of reunification services—six or 12 months depending on the age of the dependent child. (§ 361.5, subd. (a).)

Section 361.5, subdivision (b), however, sets forth certain exceptions—called reunification bypass provisions—to this "general mandate of providing reunification services." (*In re Joshua M.* (1998) 66 Cal.App.4th 458, 470 [78 Cal.Rptr.2d 110].) These enumerated "bypass" provisions are the specific instances in which the Legislature has recognized "that it may be fruitless to provide reunification services," and once the court has found one of these specific instances applicable, "the general rule favoring reunification is replaced by a legislative assumption that offering services would be an unwise use of governmental resources." (*In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 478 [73 Cal.Rptr.2d 793].)

■ As noted above, the juvenile court denied reunification services under the exception enumerated in section 361.5, subdivision (b)(10). This section provides reunification services need not be provided to a parent when it is established by clear and convincing evidence that "the court ordered termination of reunification services for any siblings or half siblings of the child because the parent . . . failed to reunify with the sibling or half sibling *after the sibling or half sibling had been removed from that parent . . . pursuant to Section 361* and that parent . . . is the same parent . . . described in subdivision (a) and that, according to the findings of the court, this parent . . . has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from that parent . . . ." (§ 361.5, subd. (b)(10), italics added.)

This particular bypass provision recognizes the problem of recidivism on the part of a parent who has been afforded "at least one chance to reunify with a different child through the aid of governmental resources and fail[ed] to do so" because "when another child of that same parent is adjudged a dependent child, it is not unreasonable to assume reunification efforts will be unsuccessful." (*In re Baby Boy H., supra,* 63 Cal.App.4th at p. 478.) If it is found to apply, the juvenile court must deny reunification services unless it finds, by clear and convincing evidence, that reunification is in the best interest of the child. (§ 361.5, subd. (c).)

Mother contends section 361.5, subdivision (b)(10) does not apply here because the evidence did not establish a sibling or half sibling was removed from her care "pursuant to Section 361"—as the provision requires—but

rather pursuant to Wisconsin law.[2] Neither party has cited to, nor have we found, any decision construing section 361.5, subdivision (b)(10), on this particular point.[3]

▮ In construing a statute we must ascertain the legislative intent, so as to effectuate the purpose of the law. (*In re David* (2012) 202 Cal.App.4th 675, 682 [135 Cal.Rptr.3d 855] (*David*).) We begin by examining the words of the statute. " '[I]f the statutory language is not ambiguous, then we presume the Legislature meant what it said, and the plain meaning of the language governs.' " (*In re Austin P.* (2004) 118 Cal.App.4th 1124, 1129 [13 Cal.Rptr.3d 616], quoting *People v. Walker* (2002) 29 Cal.4th 577, 581 [128 Cal.Rptr.2d 75, 59 P.3d 150]; see *In re B.L.* (2012) 204 Cal.App.4th 1111, 1116 [139 Cal.Rptr.3d 525] [construing the term "siblings or half siblings" in § 361.5, subd. (b)(10)].) ▮ " 'Appellate courts may not rewrite unambiguous statutes' " or "rewrite the clear language of [a] statute to broaden the statute's application." (*David*, at p. 682.) It is only when the language supports more than one reasonable construction that we consult legislative history, the ostensible objects to be achieved, or other extrinsic aids in order to select the construction that most closely comports with the legislative intent. (*Ibid.*)

▮ In our view the language of section 361.5 is clear and unambiguous, rendering it unnecessary to resort to any extrinsic aids. (*David, supra*, 202 Cal.App.4th at p. 682.) The plain language of the statute is limited to cases involving the removal of a sibling or half sibling from the parent *"pursuant to Section 361."* (Italics added.) The Legislature did not include any language that would permit the extension of this provision to a circumstance in which a sibling was previously removed pursuant to the dependency law of another jurisdiction, whether or not that law is comparable to section 361. It is undisputed here that a half sibling of C.R. was previously removed from Mother's custody pursuant to Wisconsin law, not "pursuant to Section 361." The clear language of section 361.5, subdivision (b)(10) does not apply to these facts.

The Agency argues such an interpretation is too narrow, and one the Legislature could not have intended, since it would require that reunification

---

[2] Mother also objects that the evidence did not support the juvenile court's finding she had not made a reasonable effort to treat the problems leading to the half sibling's removal, and that the court abused its discretion by declining to order reunification services pursuant to section 361.5, subdivision (c). In light of our decision, discussed below, it is unnecessary to address these alternate claims.

[3] We note one of the other bypass provisions requires a previous adjudication under "Section 300" and removal "pursuant to Section 361." (§ 361.5, subd. (b)(3).) We have similarly been unable to find any decision applying this provision to a previous adjudication of dependency and order of removal made pursuant to the law of another state rather than under "Section 300" and "Section 361."

services be provided to "recidivist parents" simply because their failure to reunify with a sibling occurred under the law of a sister state. We disagree for a number of reasons.

First, the Legislature knew how to write in language addressing out-of-state removal of a dependent sibling in section 361.5, subdivision (b)(10), but chose not to do so. Examples of such language can readily be found in other provisions of California dependency law, including in the very same statute as the provision in issue. Section 361.5, subdivision (b)(8) provides that reunification services need not be provided for a parent if the child was conceived as a result of the parent committing conduct "outside of this state that, if committed in this state, would constitute one of [the] offenses" listed in Penal Code sections 288 and 288.5. Welfare and Institutions Code section 361.5, subdivision (a) authorizes the juvenile court to order services for the child and the biological father upon "proof of a prior declaration of paternity by *any court of competent jurisdiction.*" (Italics added.) Even clearer language giving effect to out-of-state determinations in dependency cases is found in the California Rules of Court: "At the disposition hearing, the court may not set a hearing under section 366.26 to consider termination of the rights of only one parent unless . . . the rights of the other parent have been terminated by a California court of competent jurisdiction *or by a court of competent jurisdiction of another state under the statutes of that state* . . . ." (Cal. Rules of Court, rule 5.695(*l*), italics added; see *id.,* rules 5.705, 5.708(*l*), 5.725(g).) Had the Legislature intended section 361.5, subdivision (b)(10) to encompass sibling reunification decisions rendered in other states, it had the means to accomplish that result. It is not our function to "rewrite the clear language of [a] statute to broaden [its] application." (*David, supra,* 202 Cal.App.4th at p. 682; see *In re B.L., supra,* 204 Cal.App.4th at p. 1116.)

Second, there are sound reasons why the Legislature might have chosen to limit the application of section 361.5, subdivision (b)(10) to orders terminating reunification made under the laws and procedures of this state. That subdivision operates to deny a parent a highly significant right—the opportunity to engage in an effort to reunify with his or her child. In California, orders bypassing or terminating reunification services require proof of specified grounds by clear and convincing evidence in most instances. (§§ 361.5, subd. (b), 366.21, subd. (e); Cal. Rules of Court, rule 5.710(c).) California follows procedures that guarantee a parent a hearing on and right to contest such an order. The California Legislature in enacting subdivision (b)(10) of section 361.5 might well have been concerned that not all jurisdictions provided the same rights and level of due process protection to parents that California does. Under the Agency's interpretation of the subdivision, a California court would be required to accept the determination of a sister state in terminating services to the parent without regard to the degree of due process accorded to the parent by the sister state, the burden of proof required

in establishing grounds for termination in the sister state, or whether services were terminated in the sister state for a reason that would not be applicable in California.

Wisconsin, the site of the prior dependency proceeding at issue here, illustrates some of the potentially outcome-determinative differences in procedure that can exist between California and other states. Under Wisconsin law, while jurisdictional facts must be decided by clear and convincing evidence in dependency cases, dispositional orders are determined using a preponderance-of-the-evidence standard.[4] (Wis. Stat. Ann., § 48.31; *In Interest of T.M.S.* (1989) 152 Wis.2d 345, 355–357 [448 N.W.2d 282, 286–288].) In Wisconsin, both jurisdictional facts and facts warranting termination of parental rights can be established by motions for summary judgment without affording the parent a hearing. (*In Interest of F.Q.* (1991) 162 Wis.2d 607, 611–612 [470 N.W.2d 1, 2–3]; *In re Alexander V.* (2004) 271 Wis.2d 1, 17–19 [2004 WI 47, 678 N.W.2d 856, 863–865]; cf. *In re Mark K.* (1984) 159 Cal.App.3d 94, 102–104 [205 Cal.Rptr. 393] [summary judgment procedure inapplicable in Cal. dependency proceedings].) We do not find it reasonable to impute to the Legislature an intention to require our courts to give effect to all prior out-of-state adjudications concerning reunification services for a parent's other children, without any distinction based on the procedures, proof burdens, and grounds upon which they were based.

Finally, we note the higher level of proof required for removal under section 361 is a critical part of California's overall dependency scheme, one of several procedural safeguards that led our Supreme Court to conclude in 1993 that California's current procedure for terminating parental rights does not violate constitutional due process. (See *Cynthia D. v. Superior Court, supra,* 5 Cal.4th at pp. 248, 253, 256.) We may deem the Legislature was aware of this decision when it first enacted section 361.5, subdivision (b)(10), three years later, and included at that time the language requiring a sibling's prior removal "pursuant to Section 361." (*People v. McGuire* (1993) 14 Cal.App.4th 687, 694 [18 Cal.Rptr.2d 12]; see Stats. 1996, ch. 1083, § 2.7, p. 7526, operative Jan. 1, 1999.)

For these reasons, we reject the Agency's interpretation of section 361.5, subdivision (b)(10) and find the trial court erred in relying on the prior Wisconsin proceedings in denying reunification services to Mother.

---

[4] The documents submitted to the juvenile court by the Agency, concerning the prior dependency proceeding in Wisconsin, show that C.R.'s half brother was removed from Mother's custody in September 1999, pursuant to section 48.345, Wisconsin Statutes Annotated. That statute authorizes a judge to make a dispositional order, including an order of removal, when the "judge finds that the child is in need of protection or services." (Wis. Stat. Ann., § 48.345.)

### III. DISPOSITION

The petition for extraordinary writ is granted. Let an extraordinary writ issue directing respondent court to vacate its findings and orders entered March 19, 2012, denying petitioner reunification services pursuant to section 361.5, subdivision (b)(10) and setting a section 366.26 hearing. Respondent court is further directed to conduct a new dispositional hearing, and, after taking into consideration any new evidence or change in circumstances, make any appropriate orders. This opinion is final in this court immediately. (Cal. Rules of Court., rules 8.452(i), 8.490(b)(3).)

Dondero, J., and Banke, J., concurred.