Filed 11/23/20  A.A. v. Superior Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| A.A.,<br><br>        Petitioner,<br><br>                v.<br><br>THE SUPERIOR COURT OF TUOLUMNE COUNTY,<br><br>        Respondent;<br><br>TUOLUMNE COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>        Real Party in Interest. | F081619<br><br>(Super. Ct. No. JV8116)<br><br><br>**OPINION** |

## THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  Frank Dougherty, Judge.  (Retired Judge of the Merced County Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)

Tuolumne County Office of Conflict Counsel and Carolyn Woodall for Petitioner.

No appearance for Respondent.

Sarah Carrillo, County Counsel, and Maria Sullivan, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]        Before Detjen, Acting P.J., Franson, J. and DeSantos, J.

Petitioner, A.A. (mother), seeks an extraordinary writ (Cal. Rules of Court, rules 8.450–8.452) from the juvenile court's orders issued at a contested dispositional hearing in August 2020 denying her reunification services under Welfare and Institutions Code section 361.5, subdivision (b)(10)[1] and setting a section 366.26 hearing on December 8, 2020, as to her now one-year-old daughter, Emma.[2] Subdivision (b)(10) of section 361.5 applies when the parent failed to reunify with a sibling and to make reasonable efforts to remedy the problem requiring the sibling's removal. Mother failed to reunify with Emma's brothers in May 2020 when the court terminated her reunification services. She contends the court misapplied the statute by evaluating her efforts after reunification services were terminated rather than after the siblings were removed. We deny the petition.

## PROCEDURAL AND FACTUAL SUMMARY

Emma was born in November 2019, while mother was attempting to reunify with Emma's brothers, then six-year-old Christopher, four-year-old Joseph and two-year-old Jonathan (the brothers). Mother had received nearly a year of reunification services and a 12-month review hearing was scheduled for December 2019.

The brothers were taken into protective custody in November 2018 by the Tuolumne County Department of Social Services (department) after then three-year-old Joseph was found by law enforcement wandering down a road wearing only a soiled diaper. He had been missing for approximately one hour and no one from the family reported him missing. Law enforcement returned Joseph to the home of his maternal grandmother, C.B., where he lived with Christopher and C.B.'s 12- and 18-year-old daughters and 15-year-old son. Law enforcement observed the home was unsafe and

---

[1] Statutory references are to the Welfare and Institutions Code unless otherwise noted.

[2] Emma was born in late November 2019.

2.

unsanitary. Mother and John, C.B.'s husband and mother's stepfather, lived with Jonathan in another house. John is the father of mother's children.

The department was familiar with the family, having responded to numerous referrals C.B. and John abused and neglected C.B.'s children and John physically, emotionally and sexually abused mother.

Mother and John hid their sexual relationship from C.B. and convinced her mother conceived by inserting a turkey baster with John's sperm inside herself. C.B. said mother was not capable of raising a child beyond the age of 18 months because of her developmental delay. Once her children reached that age, she gave them to C.B. to raise.

The parents were convicted of willful cruelty to a child following the incident with Joseph, sentenced to four years of probation and required to complete a 52-week parenting course.

The juvenile court exercised its dependency jurisdiction over the brothers in January 2019, ordered them removed from parental custody and ordered mother and John to participate in reunification services, which required them to complete psychological evaluations. Dr. Brandi Hawk diagnosed John with narcissistic personality disorder. Dr. Blake Carmichael diagnosed mother with mild intellectual disability. Carmichael opined mother's "longstanding limitations in adaptive skills, interpersonal functioning, and decision-making, in conjunction with her lack of response to reasonable and targeted interventions, preclude[d] her from safely parenting her children." The psychologists did not believe the parents were likely to benefit from reunification services.

Mother was also ordered to complete a parenting program and participate in mental health counseling. She participated in weekly counseling with Natalie Gray to work on family roles and dynamics, parenting, healthy boundaries, family relationships and trauma. Gray reported in October 2019 that mother was becoming more independent. However, Gray was concerned mother could not apply the tools she taught her, and it was unclear what role mother played in her children's lives.

3.

In November 2019, mother gave birth to Emma prematurely after being involved in a car accident. The department did not initially detain Emma but filed a dependency petition on her behalf under section 300, subdivision (j), alleging mother and John neglected Emma's brothers, placing Emma at a substantial risk of suffering similar abuse or neglect. The petition further alleged mother and John were unable to benefit from reunification services. Emma was taken into protective custody in mid-December 2019 and placed in foster care with her brothers.

Over several days in May 2020, the juvenile court conducted a contested 12-month review hearing as to the brothers and a jurisdictional hearing as to Emma. Social worker Houa Xiong testified mother was living with her fiancé, Matthew. She stopped attending counseling sessions with Gray in November 2019 but resumed in April 2020. Gray was encouraged that mother moved out of C.B.'s home and obtained employment. However, Gray was concerned about mother's inconsistent attendance and participation in therapy. Mother also stopped attending parenting classes in November after her accident.

Mother testified she moved in with Matthew in December 2019. She was employed briefly in March or April 2020 but was laid off. She hoped to go to college and become a nurse. She was managing her own social security income. She conceived her children through sexual intercourse with John. She told C.B. she used a turkey baster because she was afraid to tell her the truth. She initiated a sexual relationship with John when she was 18 and conceived Christopher when she was 19. Mother acknowledged she had been resistant to attending parenting classes and participating in counseling but would participate if services were continued.

Carmichael testified regarding his psychological findings as to mother. His conclusion was unchanged by mother's testimony she was employed, lived apart from John and C.B., regularly engaged in individual therapy or expressed regret about conceiving children with John.

4.

The juvenile court found mother and John were provided reasonable reunification services, but their progress was minimal to poor. The court found mother continued to minimize John's actions. The court terminated services and set a section 366.26 hearing for September 1, 2020. The court sustained the section 300 petition as to Emma and set a dispositional hearing on June 16, 2020. Mother and John filed writ petitions, challenging the reasonableness of reunification services provided in the brothers' cases. We denied their petitions.[3]

The department recommended the juvenile court deny mother and John services to reunify with Emma under section 361.5, subdivision (b)(10). Although mother made noteworthy and important changes, the department considered them "minimal and new." Further, mother lacked insight into why the brothers had to be removed, blaming C.B. and her dirty home.

After multiple continuances, the juvenile court conducted a contested dispositional hearing on August 20, 2020. Xiong testified mother continued to live with Matthew. Gray was still working with mother on understanding the family dynamics but remained concerned about her ability to safely parent; specifically, her ability to understand and retain information. Xiong observed a visit between mother and Emma with her brothers on a Zoom call and did not have safety concerns. Mother came prepared with a supply bag and made sure Emma's diaper was changed. However, Xiong had to counsel her in early July not to give Emma infant apple juice because of her young age. After being redirected twice, mother said Emma's pediatrician approved of her giving Emma infant apple juice and she would continue to do so. Mother said she previously gave her other

---

[3]     Mother and John argued the department unreasonably delayed in referring them for a psychological evaluation. We denied their petitions in *A.A. v. Superior Court* (Aug. 3, 2020, F081201) [nonpub. opn.] and *John B. v. Superior Court* (Aug. 3, 2020, F081202) [nonpub. opn.]. On our own motion, we take judicial notice of the appellate records and our opinions in those cases. (Evid. Code, §§ 452, subd. (d), 459.)

children sugar water at that age and it was not an issue with their development. Xiong's concern was mother was giving Emma infant apple juice instead of formula.

Xiong did not believe mother accepted responsibility for the role she played in her children's removal or that she could reunify with Emma if provided six months of services. Since Emma did not appear distressed when visits ended, Xiong could not say whether Emma was bonded to mother. Emma seemed to be equally bonded to both parents as well as the caregivers. Mother was affectionate with Emma "in [her] own way" but sometimes struggled to communicate with Emma as a newborn and her affect was rigid rather than nurturing with her.

Xiong did not believe providing mother reunification services would serve Emma's best interest because of mother's lack of insight and failure to make sufficient progress. For example, she only attended seven parenting classes. Had she attended regularly, she would have completed the program.

Mother testified she was living with Matthew and did not have a current relationship with John. She last spoke to him in January 2020. She was having weekly in-person visits with Emma and was employed. She attended parenting classes once a week through Zoom. She missed two classes because she had to work. She began seeing Gray again in July 2020 and met with her over the telephone. She was also meeting with a counselor at the probation office to discuss childhood trauma.

The parents' attorneys argued for reunification services. Counsel for mother argued mother made "tremendous progress," citing Xiong's testimony. She asked the court to consider the totality of mother's circumstances in considering the reasonableness of her efforts. County counsel urged the court to deny mother and John reunification services as recommended. Minor's counsel joined the recommendation of county counsel.

The juvenile court denied the parents reunification services as recommended. Regarding mother, the court stated:

6.

"Now [mother] has made efforts lately, … and, of course, the Court will commend her for doing so. And it seems to the Court that her motivations for becoming involved began after she realized that the relationship with … John, was not in her best interest or … in the child's best interest.

"But she's demonstrated over a considerable period of time that she's not been able to complete services and has only lately, in July, August began on her own engaging in services. And, of course, she's to be commended for that. But if you look at this case in the totality of the circumstances, as [mother's attorney] has urged the court to do, her progress has been poor. [¶] … [¶]

"[T]he Court finds that neither John nor [mother] has made reasonable efforts to treat the problems that led to the child's removal, and that they cannot benefit from services. And beyond that, services to [mother] and John are not in [Emma's] best interest at this time, …."

## DISCUSSION

When the juvenile court removes a child from parental custody at the dispositional hearing, it must provide reunification services to the child and the parents. (§ 361.5, subd. (a).) The purpose of providing reunification services is to "eliminate the conditions leading to loss of custody and facilitate reunification of parent and child. This furthers the goal of preservation of family, whenever possible." (*In re Baby Boy H*. (1998) 63 Cal.App.4th 470, 478.) However, subdivision (b) of section 361.5 exempts from reunification services " ' "those parents who are unlikely to benefit" ' [citation] from such services or for whom reunification efforts are likely to be 'fruitless.' " (*Jennifer S. v. Superior Court* (2017) 15 Cal.App.5th 1113, 1120.) The 17 different paragraphs set forth in subdivision (b) of section 361.5—which authorize denial of reunification services under various specific circumstances—are sometimes referred to as " 'bypass' " provisions. (*Melissa R. v. Superior Court* (2012) 207 Cal.App.4th 816, 821.)

Once it has been determined one of the bypass provisions applies, " ' "the general rule favoring reunification is replaced by a legislative assumption that offering services would be an unwise use of governmental resources." ' " (*In re William B*. (2008) 163

Cal.App.4th 1220, 1227.) Thus, if the juvenile court finds a provision of section 361.5, subdivision (b), applies, the court "shall not order reunification for [the] parent … unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child." (§ 361.5, subd. (c)(2).) "The burden is on the parent to … show that reunification would serve the best interests of the child." (*In re William B.*, at p. 1227.)

On appeal, we review dispositional findings and orders under the substantial evidence standard of review. (*In re A.S.* (2011) 202 Cal.App.4th 237, 244.) Substantial evidence exists when the evidence is "reasonable in nature, credible, and of solid value," so that "a reasonable mind would accept [it] as adequate to support [the] conclusion." (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433.) Under this standard of review, we consider the record as a whole, in a light most favorable to the juvenile court's findings and conclusions, and we defer to the juvenile court on any issues of credibility of the evidence. (*In re Tania S.* (1992) 5 Cal.App.4th 728, 733–734.) Moreover, in reviewing the record for substantial evidence, we bear in mind the juvenile court was required to make the finding on the heightened clear and convincing evidence standard of proof. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995–996.)

The juvenile court denied mother reunification services under section 361.5, subdivision (b)(10), which applies when the "court ordered termination of reunification services for any siblings … of the child because the parent … failed to reunify with the sibling … after the sibling … had been removed from that parent … pursuant to Section 361 and that parent … has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling … from that parent …. "

Mother contends the juvenile court was required to consider the efforts she made subsequent to the *removal* of Emma's brothers in January 2019, rather than subsequent to the termination of her reunification services in May 2020, in deciding whether she made subsequent reasonable efforts under the statute. To limit its review to the three months between May and August 2020, she argues, misapplies the statute and minimizes the

8.

significance of her newfound self-sufficiency and independence. It also fails to give due weight to the improved frequency and quality of visits, "arguably the most important aspect of reunification," which "belie a conclusion that provision of services with respect to Emma would be futile."

We concur a parent's efforts should be assessed over a meaningful period of time and "[t]he failure of a parent to reunify with a prior child should never cause the court to reflexively deny that parent a meaningful chance to do so in a later case." (*Renee J. v. Superior Court* (2002) 96 Cal.App.4th 1450, 1464.) However, contrary to mother's assertion, the juvenile court did *not* consider only her efforts subsequent to its order terminating reunification services. Rather, the court viewed the "totality" of the evidence in finding she failed to make subsequent efforts. Substantial evidence supports the court's ruling.

The brothers were removed from mother's custody because their living conditions were unsafe and unsanitary, and they were not being supervised. They were also being raised in an unhealthy family dynamic where their father was also their grandfather and familial boundaries in general were blurred. Mother was provided services to improve her parenting skills and identify any psychological problems that contributed to her poor parenting and poor judgment in engaging in sexual relations with John. The psychologist concluded mother's general intellectual ability was low compared to her same-aged peers and that her functioning was compromised. She had difficulty learning and generalizing new skills and did not understand why the brothers were removed. She maintained it was a "set up" and that someone let her son out of the house. She also denied that she had any limitations and believed she was adequately functioning. As a result, she made limited progress in her services plan and her service providers did not believe she was motivated to complete it.

When the juvenile court conducted the dispositional hearing in August 2020, it had been 18 months since the court removed mother's sons and ordered her to complete a

9.

parenting program and participate in mental health counseling. However, she had only attended seven parenting classes and resumed mental health counseling only the month before. Consequently, while mother may have achieved some success in attaining personal independence, she had not made reasonable efforts to resolve the problems that required the brothers' removal by continuing to participate in the services ordered to reunify with them.

We conclude the juvenile court properly applied section 361.5, subdivision (b)(10) to the evidence and substantial evidence supports its denial of reunification services to mother as to Emma.

We find no error.

## DISPOSITION

The petition for extraordinary writ is denied. This court's opinion is final forthwith as to this court pursuant to rule 8.490(b)(2)(A).

10.