Filed 8/15/23  In re L.A. CA4/2
See Dissenting Opinion

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re L.A., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E080768 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ2100611) |
| v. | OPINION |
| A.M., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Mona M. Nemat, Judge.

Conditionally reversed with directions.

Paul A. Swiller, under appointment by the Court of Appeal, for Defendant and

Appellant.

1

Minh C. Tran, County Counsel, and Teresa K.B. Beecham and Prabhath Shettigar, Deputy County Counsel, for Plaintiff and Respondent.

A.M. (mother) appeals from an order terminating parental rights over her minor child L.A. She argues the Riverside County Department of Public Social Services (department) did not conduct a sufficient inquiry into her child's possible Indian ancestry under the Indian Child Welfare Act (ICWA).[1] The department argues that it had no duty of initial inquiry under ICWA. We disagree with the department, and therefore conditionally reverse the termination of parental rights.

BACKGROUND

This dependency concerns mother's child L.A. (born 2021).

In October 2021 the department filed a petition under Welfare and Institutions Code[2] section 300, subdivisions (a), (b), and (e), alleging, among other things, serious physical abuse of a child under five. On October 7, 2021, the department sought and obtained a protective custody warrant under section 340 and placed L.A. in foster care.

Over the course of the dependency, mother and father both consistently denied any Indian heritage. Father told the department his family support consisted of two paternal cousins whom he sees as aunts. Paternal grandfather is deceased, and father has no

---

[1] "In addition, because ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M.*).)

[2] All future statutory references are to the Welfare and Institutions Code unless otherwise stated.

contact with paternal grandmother.  The department also identified three additional

relatives—which may have included the previously discussed paternal cousins—for

possible family placement.  L.A. was eventually placed with a different paternal cousin

who was not previously identified for possible placement.  Mother's parents were

apparently alive, and mother told the department she had two brothers and a sister.

Despite this, there is no indication the department ever asked anybody other than mother

and father about L.A.'s potential Indian heritage.

In April 2022, the juvenile court found the allegations in the first amended petition

true, denied parents reunification services under section 361.5, subdivisions (b)(5)-(6),

and set a section 366.26 hearing.  At the section 366.26 hearing in February 2023, the

court terminated both parents' parental rights.  Mother appealed.

ANALYSIS

Mother argues the department failed to complete the initial inquiry required by

ICWA, because it did not ask extended family members about possible Indian ancestry.

The department argues it was not required to conduct an initial inquiry as to extended

family members because the children were initially taken into custody under a

section 340 protective custody warrant.  (§ 224.2, subd. (b).)  We agree with Mother and

conditionally reverse.

A. *Legal Background*

Under California law, the juvenile court and county child welfare department have

"an affirmative and continuing duty to inquire" whether a child subject to a section 300

3

petition may be an Indian child. (§ 224.2, subd. (a); see *In re D.F.* (2020) 55 Cal.App.5th 558, 566 (*D.F.*).) "This continuing duty can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*D.F.*, at p. 566.)

The department always has an initial duty to inquire into whether a child is an Indian child. (§ 224.2, subd. (b); *In re J.S.* (2021) 62 Cal.App.5th 678, 686.) "The department's 'duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child.' " (*In re Robert F.* (2023) 90 Cal.App.5th 492, 499, review granted July 26, 2023, S279743 (*Robert F.*); see § 224, subd. (a); Cal. Rules of Court, rule 5.481(a).) "[U]nder subdivision (b) of section 224.2, '[i]f a child is placed into the temporary custody of a county welfare department pursuant to Section 306,' the department's obligation includes asking the 'extended family members' about the child's Indian status."[3] (*Robert F.* at p. 500.) Extended family members include adults who are the child's stepparents, grandparents, aunts, uncles, brothers, sisters, nieces, nephews, and first or second cousins. (25 U.S.C. § 1903(2); § 224.1, subd. (c).)

Nevertheless, the department contends it had no duty to ask extended family members about Indian status, relying on recent cases limiting the department's duty to conduct an initial inquiry. Specifically, the department cites the concurring opinion in *In*

---

[3] Section 224.2, subdivision (b), also applies when a child is placed in the temporary custody of a county probation department pursuant to section 307. But then it is the county probation department's duty of inquiry, and not the county welfare department's. (See § 224.2, subd. (b).)

4

*re Adrian L.* (2022) 86 Cal.App.5th 342, 357-358 (*Adrian L.*), *Robert F.*, *supra*, 90 Cal.App.5th 492, and *In re Ja.O.* (2023) 91 Cal.App.5th 672, review granted July 26, 2023, S280572. Each of these cases limited the phrase " 'placed into the temporary custody of a county welfare department pursuant to Section 306' " (*Robert F.* at p. 500) to the department's exercise of its authority under section 306, subdivision (a)(2), "to take children into temporary custody 'without a warrant' in certain circumstances." (*Robert F.*, at p. 497; see *Adrian L.* at pp. 357-358 (conc. opn. of Kelley, J.).) According to this line of authority, "[a] department that takes a child into protective custody pursuant to a warrant does so under section 340, not section 306," and therefore the department does not have a duty of initial inquiry when a child is taken into custody under a protective warrant. (*Robert F.*, at p. 497.)

We disagree with these cases and agree instead with the holding of *In re Delila D.* that "there is only one duty of initial inquiry, and that duty encompasses available extended family members no matter how the child is initially removed from home." (*In re Delila D.* (July 21, 2023, E080389) __ Cal.App.5th __ [2023 Cal.App. LEXIS 554 at p. *3] (*Delila D.*).) As *Delila D.* concluded, the scope of that inquiry does not turn on how a child is taken into custody. Section 340, subdivision (c), requires a child that is taken into protective custody by law enforcement to be delivered by a social worker. "When a child is removed by warrant, the taking is authorized by section 340, and the holding or maintaining in custody is authorized by section 306, subdivision (a)(1)." (*Delila D.*, at p. __ [2023 Cal.App. Lexis 554 at p. *20].) Meanwhile "[w]hen a child is

5

removed without a warrant, the taking is authorized by section 306, subdivision (a)(2) (for social workers) and by either section 305 or 305.6 (for police officers). If a social worker takes a child without a warrant, section 306, subdivision (a)(2) authorizes the social worker to 'maintain' custody of the child," and "if a police officer takes a child without a warrant, section 306, subdivision (a)(1) authorizes the social worker to '[r]eceive and maintain' the child upon delivery by the officer, pending the detention hearing." (*Delila D.*, at p. __ [2023 Cal.App. Lexis 554 at p. *21.) As to any of these ways that a child is taken into custody, the child must be delivered to the department (if not back to a parent) and section 306 then authorizes the department to maintain custody. In other words, "[r]egardless of whether a child is taken into custody by law enforcement and then delivered to the department, or is taken by the department directly, it is the *maintaining in custody* that triggers the need for a detention hearing." (*Delila D.*, at p. __ [2023 Cal.App. Lexis 554 at pp. *21-22.) Thus, "[t]here is no practical difference between children taken by warrant and those taken without a warrant, and so there is no reason to distinguish between them for ICWA inquiry purposes." (*Id.* at p. __ [2023 Cal.App. Lexis 554 at p. *23].)

Accordingly, we conclude, as *Delila D.* did, "that section 224.2(b)'s reference to temporary custody 'pursuant to [s]ection 306' is better read as including children who, though initially removed by protective custody warrant, are then delivered or placed into the department's custody pending a detention hearing." (*Delila D.*, *supra*, __ Cal.App.5th at p. __ [2023 Cal.App. Lexis 554 at p. *23].) This includes the children

6

here. This conclusion—unlike the department's— is consistent with California Rules of Court rule 5.481(a)(1), which requires any party seeking termination of parental rights to inquire of extended family members about the child's Indian heritage.

Having concluded the department had a duty of initial inquiry that includes asking extended relatives about Indian status, our next question is whether it satisfied that duty. It did not.

There is no question the department failed to ask certain identified and reasonably available extended family members about the children's potential Indian heritage. Indeed, the department apparently failed to ask any family members other than mother and father about potential Indian heritage despite being in actual contact with multiple extended family members and knowing of several more. For instance, the department did not ask the paternal cousins father referred to as aunts, any of the three paternal family members contacted about possible relative placements, the paternal cousin with whom L.A. was eventually placed, mother's parents, mother's brothers, or mother's sister.

Moreover, the failure to inquire of these extended family members was prejudicial. In this context, there is prejudice if "the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Benjamin M*., *supra*, 70 Cal.App.5th at p. 744.) Here, at least some of the identified but unasked family members—the maternal grandparents and paternal cousins—were apparently readily available to the department, as they were contacted by the department on other matters and could have "shed meaningful light on

7

whether there is reason to believe" the children were Indian children. (*Ibid.*) The department, at least, has not articulated any reason why that might not be the case. (Cf. *Id.* at p. 745 [where parents were never married, mother had no "necessary logical reason to know" about father's potential Indian heritage].) The department was obligated at least to try to contact identified extended family members and ask them about possible Indian heritage, or else explain why it was not reasonably practical to do so.

Accordingly, we conditionally reverse to permit the department to conduct a sufficient inquiry under ICWA.

DISPOSITION

The order terminating mother's parental rights is conditionally reversed, and the court's finding that ICWA does not apply is vacated. The matter is remanded to the juvenile court with directions to comply with the inquiry provisions of ICWA and of sections 224.2 and 224.3—and, if applicable, the notice provisions as well—consistent with this opinion. If, after completing the initial inquiry, neither the department nor the court has reason to know that the child is an Indian child, the order terminating parental rights shall be reinstated. If the department has reason to know the child is an Indian child, the court shall proceed accordingly.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL_____
J.

I concur:

McKINSTER_____
Acting P. J.

8

[*In re L.A.,* E080768]

MILLER, J., Dissenting

I respectfully dissent to the majority opinion finding that remand is necessary in order for the Riverside County Department of Social Services (Department) to conduct further inquiry of L.A. (Minor)'s relatives as to whether she is an Indian child pursuant to the guidelines of Welfare and Institutions Code[1] section 224.2, subdivision (b). I follow the reasoning in this court's previous opinions of *In re Robert F.* (2023) 90 Cal.App.5th 492 (*Robert F.*), review granted July 26, 2023, S279743, and *In re Ja.O.* (2023) 91 Cal.App.5th 672 (*Ja.O.*), review granted July 26, 2023, S280572.[2] Since Minor was taken into custody pursuant to a protective warrant under the plain language of section 340, the additional inquiry requirements of section 224, subdivision (b), do not apply. I would affirm the judgment.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] Pursuant to the California Supreme Court's order issued on July 26, 2023, for *Ja.O.*, "Pending review, the opinion of the Court of Appeal, which is currently published at 91 Cal.App.5th 672, 308 Cal.Rptr.3d 596, may be cited, not only for its persuasive value, but also for the limited purpose of establishing the existence of a conflict in authority that would in turn allow trial courts to exercise discretion under *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 456, . . ., to choose between sides of any such conflict. (See Standing Order Exercising Authority Under California Rules of Court, Rule 8.1115(e)(3), Upon Grant of Review or Transfer of a Matter with an Underlying Published Court of Appeal Opinion, Administrative Order 2021-04-21; Cal. Rules of Court, rule 8.1115(e)(3) and corresponding Comment, par. 2.) The California Supreme Court granted review in *Robert F.* pending the outcome of *Ja.O.* and similarly may be cited pursuant to California Rules of Court, rule 8.1115(e)(3).

1

A protective custody removal warrant under section 340 was obtained by the Department for Minor on October 7, 2021, and Minor was detained by the Department on the same day.

"There is no federal duty to inquire of extended family members." (*In re A.C.* (2021) 65 Cal.App.5th 1060, 1069.) The duty of inquiry under state law comes from section 224.2, subdivision (b). Subdivision (b) of section 224.2 provides, "If a child is placed into the temporary custody of a county welfare department pursuant to Section 306 or county probation department pursuant to Section 307, the county welfare department or county probation department has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." The plain language of section 224.2, subdivision (b), provides that if a child is placed into the temporary custody of a county welfare department pursuant to section 306, there is a duty to inquire of extended relatives about Indian ancestry.

Section 306 provides, "(a) Any social worker in a county welfare department, or in an Indian tribe that has entered into an agreement pursuant to Section 10553.1 while acting within the scope of his or her regular duties under the direction of the juvenile court and pursuant to subdivision (b) of Section 272, may do all of the following: [¶] (1) Receive and maintain, pending investigation, temporary custody of a child who is described in Section 300, and who has been delivered by a peace officer. [¶] (2) Take

2

into and maintain temporary custody of, without a warrant, a child who has been declared a dependent child of the juvenile court under Section 300 or who the social worker has reasonable cause to believe is a person described in subdivision (b) or (g) of Section 300, and the social worker has reasonable cause to believe that the child has an immediate need for medical care or is in immediate danger of physical or sexual abuse or the physical environment poses an immediate threat to the child's health or safety.  [¶] (b) Upon receiving temporary custody of a child, the county welfare department shall inquire pursuant to Section 224.2, whether the child is an Indian child."

Section 340, subdivision (a), provides, "Whenever a petition has been filed in the juvenile court alleging that a minor comes within Section 300 and praying for a hearing on that petition, or whenever any subsequent petition has been filed praying for a hearing in the matter of the minor and it appears to the court that the circumstances of his or her home environment may endanger the health, person, or welfare of the minor, or whenever a dependent minor has run away from his or her court-ordered placement, a protective custody warrant may be issued immediately for the minor."

" 'Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose.  [Citation.]  We must look to the statute's words and give them their usual and ordinary meaning. [Citation.]  The statute's plain meaning controls the court's interpretation unless its words are ambiguous.' " (*People v. Arias* (2008) 45 Cal.4th 169, 177.)  " ' "[I]f the statutory language is not ambiguous, then we presume the Legislature meant what it said, and the

3

plain meaning of the language governs." ' " (*Melissa R. v. Superior Court* (2012) 207 Cal.App.4th 816, 822.)

In *Robert F.*, this court found that the plain language of section 224.2, subdivision (b), controls and it only requires that the Department make an inquiry of extended relatives if the child "is placed into the temporary custody of a county welfare department pursuant to Section 306." (*Robert F.*, *supra*, 90 Cal.App.5th at p. 500.)

This court, in *Robert F.*, followed the concurring opinion in *In re Adrian L.* (2022) 86 Cal.App.5th 342 (*Adrian L.*), a case involving a child being placed into protective custody pursuant to section 340, subdivision (b). In his concurring opinion, Justice Kelley[3], after extensive examination of the legislative history of section 224.2, subdivision (b), and the plain language of the statute (*Adrian L.*, at pp. 358-366), concluded that "[p]lacing a child into 'temporary custody of a county welfare department pursuant to [section] 306' is fundamentally different from taking a child into 'protective custody' under section 340." (*Id.* at p. 357.) "[A] removal under section 306 is considered an 'emergency removal' under ICWA, but a removal pursuant to an order issued under section 340 is not. This distinction illuminates why the legislative choice to limit the scope of section 224.2, subdivision (b), to situations where a child is placed in temporary custody of a county welfare agency pursuant to section 306 aligns it with federal ICWA guidance." As such, the requirement of section 224.2, subdivision (b) did

---

[3] Judge Michael Kelley was sitting on assignment at the Second District Court of Appeal when wrote his concurring opinion in *In re Adrian L.* Therefore, respectfully, I use the title that is correct for his position at the time.

not apply to the case in which the child was removed under section 340 based on the plain language of the statute.  (*Adrian L.*, at p. 357.)  The *Robert F.* court adopted this reasoning finding that the language of the statue was plain and controlled the interpretation of section 224.2, subdivision (b).  (*Robert F.*, *supra*, 90 Cal.App.5th at p. 500.)

Based on the plain language in section 224.2, subdivision (b), it is applicable only to situations where "a child is placed into the temporary custody of a county welfare department pursuant to [s]ection 306."  Here, Delila was placed into the Department's custody pursuant to court order under section 340, subdivision (a), not through the warrantless removal procedure provided by section 306.  Accordingly, the Department was not required to conduct inquiries with "extended family members" at this initial inquiry stage pursuant to section 224.2, subdivision (b).

The majority states that it cannot follow *Robert F.'s* reasoning because it disagrees that section 306 is limited to circumstances where the child is removed without a warrant.  Instead, the majority follows the recent case of *In re Delila D.* (2023) 93 Cal.App.5th 953, which held "[s]ection 306 authorizes a department to maintain a child in temporary custody both when the child has been taken from home by a social worker or police officer under exigent circumstances without a warrant (§ 306, subs. (a)(1) & (2) *and* when the child has been taken from home by means of a protective custody warrant issued under section 340 (§ 306, subd. (a)(1))."  It concluded, "There is no practical difference between children taken by warrant and those taken without a warrant, and so there is no reason to distinguish between them for ICWA inquiry purposes."  (*Ibid.*)

5

A similar argument was rejected in *Ja.O*, another opinion authored by this court. In *Ja.O.*, the mother argued that since section 306, subdivision (a)(1), authorizes a social worker to take a child who has been delivered by a peace officer into temporary custody, "it follows that whenever a peace officer takes a child into protective custody pursuant to a warrant and then delivers the child to a social worker, the child is thereby taken into temporary custody pursuant to section 306." (*Ja.O., supra*, 91 Cal.App.5th at p. 680.) This court rejected that argument finding that, "Subdivisions (a) and (b) of section 340 provide for the issuance of protective custody warrants. Subdivision (c) of section 340 requires that '[a]ny child taken into protective custody pursuant to this section shall immediately be delivered to the social worker,' who must then conduct an investigation 'pursuant to [s]ection 309.' Thus, when a peace officer takes a child into protective custody pursuant to a warrant and then complies with the statutory obligation to deliver the child to the social worker, the social worker is taking custody of the child pursuant to section 340, subdivision (c). [¶] But subdivision (a)(1) of section 306 has no application when children are detained pursuant to a warrant under section 340, subdivision (b). Section 306 expressly involves 'temporary custody,' which Article 7 defines, not 'protective custody' under section 340. Subdivision (a)(1) of section 306 thus applies to situations in which an officer detains a child pursuant to one of the sections in Article 7 and the officer then delivers the child to the social worker. [¶] Moreover, if Mother's interpretation of sections 306 and 340 were correct, then most of subdivision (c) of section 340 would be surplusage." (*Ja.O., supra*, 91 Cal.App.5th at p. 680.) The majority is incorrect that all children are taken into temporary custody under section 306.

I see no reason to depart from the reasoning of our previous cases of *Robert F.* and *Ja.O.*. Here, Mother and Father denied any Indian ancestry and there was no duty on behalf of the Department to make further inquiry of extended family members as there is no indication that ICWA may apply. I would uphold the judgment.

MILLER _____

J.